[Civ. No. 14172. First Dist., Div. One. May 23, 1950.]

V. BERNARDS, Appellant, v. GEORGE ROBERT GREY, as Administrator, etc., Respondent.

H. J. Kleefisch for Appellant.

Howard C. Ellis and Bernard B. Glickfeld for Respondent.

SCHOTTKY, J. pro tem.—Plaintiff and appellant on May 14, 1948, filed an action against the administrator of the estate of Adrienne M. Grey, deceased, the complaint alleging that one Fred Watwood had obtained a judgment in December, 1944, against G. Borden Yount for $14,509.85, plus interest and costs; that said judgment had been recorded in the office of the Recorder for the City and County of San Francisco on January 5, 1945; that said judgment is final and unmodified and constitutes a valid lien against certain real property of G. Borden Yount in San Francisco; that before the present action was filed Watwood assigned the judgment in the prior action to the plaintiff herein, V. Bernards; that G. Borden Yount died on or about August 17, 1946, and at that time and at all times involved here he was the owner of two parcels of certain described and unimproved real property situated in San Francisco; that such property was subject to execution and that Yount, in order "to conceal his ownership and interest in said property and to place the title to said property beyond the reach of the said judgment," conveyed it to his daughter, Adrienne M. Grey (also known as Adrienne M. Blodgett); that such conveyance was made without consideration from Adrienne M. Grey, who "took and at all times held said real property and the title thereto under said conveyances, in secret trust for and as the property of said G. Borden Yount"; that on or about January 17, 1946, prior to the death of G. Borden Yount, Adrienne M. Grey died intestate and thereafter the defendant, George Robert Grey, was appointed administrator of her estate, and, as such administrator, claimed that she was the owner of the real property and that it was not subject to the lien of the plaintiff; that plaintiff had no knowledge until May 3, 1948, of the death of G. Borden Yount, his ownership of the property or that it had been conveyed to and held in secret trust by Adrienne M.

Grey; that no probate proceeding has been had in the matter of the estate of G. Borden Yount; and that the defendant is attempting to sell said real property "at probate sale, as property purporting to be owned by said estate of Adrienne M. Grey, deceased, and in fraud of the rights and lien of plaintiff."

Plaintiff prayed that G. Borden Yount be decreed the real owner of the property at the time the judgment was recorded "and that said Adrienne M. Grey at the said time, and at the time of her death, held the same and the title thereto in secret trust for said G. Borden Yount" and that the plaintiff be decreed to have a lien against said real property.

Complaint and summons were served on defendant administrator on May 17, 1948. No answer was filed and at plaintiff's request a default was entered by the clerk on June 22, 1948, but no judgment was entered.

On July 10, 1948, the defendant filed a notice of motion to set aside the default "on the grounds of inadvertence and excusable neglect of defendant." Affidavits of the defendant and his attorney, Bernard Glickfeld, which accompanied the notice of motion, show that the summons was presented to the defendant on May 17 as he was standing outside the courtroom door in the county courthouse of Santa Clara County in San Jose and while talking with Mr. Glickfeld, Howard C. Ellis, the attorney of record for the estate of Adrienne M. Grey, and John Goodwin, who represented the purchaser of one of the two parcels of land here in question. Such sale had just been approved by the court. The defendant in his affidavit alleges that such confirmation had been sought 11 days earlier, but the matter had been continued until May 17 on the representation of counsel appearing for this plaintiff and/or the Bank of America, and that on the 17th no appearance in opposition was made.

The defendant alleges further that at the time he received the summons and complaint he placed them in his brief case, merely noting that they referred to the present action, and "through inadvertence, did not call to counsel's attention the papers he had received and was not at said time aware of their nature." It was not until on or about July 1, 1948, that the defendant, having the matter called to his attention by his attorney, checked his files and brief case and found the documents.

In support of his motion to vacate the default, the defendant also served a copy of his proposed answer and an affidavit

of merits prepared by Howard C. Ellis as attorney of record. The answer denied all the material allegations of the complaint, alleged that the estate of Adrienne M. Grey is the owner of the property in controversy and that plaintiff was ''guilty of laches in not proceeding at an earlier time in order to enforce any rights therein which he may possess.'' No counteraffidavits were filed.

The motion to set aside the default was granted and order vacating default filed on August 5, 1948. Thereafter the cause was tried without a jury and judgment was rendered in favor of defendant. This appeal is from said judgment.

Appellant's first contention is that the trial court abused its judicial discretion in granting defendant's motion to vacate the default. ■ While there is no appeal from an order setting aside a defendant's default upon which no judgment had been entered, said order not being either a final judgment or an order made after final judgment (Code Civ. Proc., § 963; *Turner* v. *Follmer*, 84 Cal.App.2d 815 [191 P.2d 777]; *Rauer's Law etc. Co.* v. *Standley*, 3 Cal.App. 44 [84 P. 214]; *Sherman* v. *Standard Mines Co.*, 166 Cal. 524 [137 P. 249]), yet, as said by this court in *Hughson* v. *Superior Court*, 120 Cal.App. 658, at pages 659-660 [8 P.2d 227], ''although no direct or separate appeal lies from an order granting a motion to vacate a default upon which no judgment has been given [citing cases], it has been uniformly held that such an order is reviewable and may be annulled on an appeal from any adverse judgment which might afterward be rendered in the action. [Citing cases].'' Appellants, therefore, upon this appeal from the judgment are entitled to make the point that the court erred in granting the motion.

■ In the recent case of *Benjamin* v. *Dalmo Manufacturing Co.*, 31 Cal.2d 523, our Supreme Court said, at page 525 [190 P.2d 593] : ''It is well settled that appellate courts have always been and are favorably disposed toward such action upon the part of the trial courts as will permit, rather than prevent, the adjudication of legal controversies upon their merits. [Citing cases.] Apt expression of this attitude is found in *Jones* v. *Title Guaranty & Trust Co.*, 178 Cal. 375, at pages 376-377 [173 P. 586] : 'This court has always looked with favor upon orders excusing defaults and permitting controversies to be heard upon their merits. Such orders are rarely reversed, and never ''unless it clearly appears that there has been a plain abuse of discretion.'' ' . . .''

But, as said in the early case of *Bailey* v. *Taaffe*, 29 Cal.

422, at page 424: "The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. In a plain case this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates. If it be doubted whether the excuse offered is sufficient or not, or whether the defense set up is with or without merit *in foro legis,* when examined under those rules of law by which Judges are guided to a conclusion, the judgment of the Court below will not be disturbed. If, on the contrary, we are satisfied beyond a reasonable doubt that the Court below has come to an erroneous conclusion, the party complaining of the error is as much entitled to a reversal in a case like the present as in any other."

In 14 California Jurisprudence, at page 1075, it is stated: "The policy of the law is to have every litigated case tried upon its merits; and it looks with disfavor upon a party who, regardless of the merits of his case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary. The discretion of the court ought always to be exercised in conformity with the spirit of the law and in such manner as will subserve rather than defeat the ends of justice."

The facts in *Benjamin* v. *Dalmo Manufacturing Co., supra,* bear a striking similarity to the facts in the instant case. It appeared in that case that the president "upon receipt of the copies of summons and complaint by him and by the secretary, directed the secretary—who was also his private secretary—to forward the papers immediately to defendant's attorney; that the secretary 'misunderstood' the 'directions so given to her . . . and understood [the president] to say that she . . . was to file said papers in the office files'; that 'as a result of such misunderstanding' the secretary 'failed to forward' the papers to defendant's attorney; that neither of the affiant officers knew of the default 'until on or about January 16, 1946,' when the president received a letter from defendant's attorney stating that the latter had noticed that on the preceding day a judgment had been taken against defendant; and that the secretary thereupon forwarded the copies of the summons and complaint to defendant's attorney on January 17, 1946." (Pp. 526-527.) The Supreme

Court said (pp. 527-528) : "From these considerations demonstrating that defendant's failure to appear in the action within the period prescribed by law was due to the inadvertent omission of defendant's officers, charged with the duty of responding to the legal process in due time, to notify defendant's attorney of the service made upon them, it may be conceded that there was reasonable ground for the trial court to excuse defendant's conduct to the point of entry of the default judgment.  As defendant maintains in this regard with respect to its corporate officers : (1) the president's delinquency stemmed from his reliance upon his secretary to follow his forwarding instructions and his failure to anticipate her misunderstanding them, with the result that the process papers were placed in the office files; and (2) the secretary's delinquency stemmed in some measure from the perfunctory nature of her official position, so that while her failure to 'read' and 'heed' the summons served upon her constituted a neglect of duty (*Gillingham* v. *Lawrence,* 11 Cal.App. 231, 233-234 [104 P. 584] ), whether or not it was 'excusable' was primarily a question for the trial court's discretion (*Ross* v. *Ross,* 48 Cal.App.2d 72, 76 [119 P.2d 444]), particularly as related to her employee status.  Factual situations generally similar to the present case in that they involved an erroneous filing in the office either of the defendant corporation (*Gorman* v. *California Transit Co., supra,* 199 Cal. 246, 248-249 [248 P. 923]) or of the attorney (*Downing* v. *Klondike Mining & Milling Co., supra,* 165 Cal. 786, 788 [134 P. 970]) have been deemed sufficient explanation for failure to make a seasonable appearance in defense of an action.  The inadvertence of defendant's officers rested not on mere forgetfulness (*Slater* v. *Selover,* 25 Cal.App. 525, 527 [144 P. 298]) but on a misunderstanding in the execution of properly given instructions, a mistake 'which might be easily made . . . without any culpable carelessness' on the part of the parties concerned. (*Downing* v. *Klondike Mining & Milling Co., supra,* 165 Cal. 786, 789.) As heretofore stated, the day following the president's receipt of notice from defendant's attorney regarding the taking of the default judgment, the papers served upon defendant's respective officers were forwarded to the attorney in prompt correction of the prior oversight.''

However, in that case the court reversed the order setting aside the default because no proceedings to set aside the default were instituted for more than three months after the

papers served upon the officers were forwarded to the attorney, but this fact does not weaken *Benjamin* v. *Dalmo Manufacturing Co.* as an authority upon the matters relating to the default in the instant case, as here the proceedings to set aside the default were instituted promptly.

In *Gorman* v. *California Transit Co.*, 199 Cal. 246 [248 P. 923], the Supreme Court upheld the order vacating a default judgment due to failure to answer, the reason for such failure given by the defendant being that after service of the summons and complaint on the secretary of the corporation they were mistakenly taken by an employee from the desk of one who was to notify the president of the corporation, and filed, and the attention of the president therefore was diverted from the necessity to act thereon. The court said, at pages 248-249: "In the instant case the inadvertence and forgetfulness of the secretary of the corporation was due to the fact that he had delivered said summons and complaint to the manager of the traffic department of said corporation with instruction to deliver the same to the president thereof immediately upon his return. The inadvertence of the manager of the traffic department in failing to carry out such instruction was attributable to the fact that the file containing said papers had been mistakenly removed from his desk by another employee of the defendant, and that his attention amid the engrossing details of his department was thus withdrawn from the same and from his duty to present the papers to the president of the corporation upon his return. It seems to us that these intervening facts furnish a sufficient basis to justify the conclusion of the trial court that the inadvertence of the officials of the defendant corporation was excusable and justified the order from which this appeal has been taken."

Appellant argues that here the default was the result of inexcusable neglect and that therefore no grounds existed for relief by the court. What is excusable neglect depends upon the facts of each case, and we believe that all of the cases cited by appellant in support of his contention are clearly distinguishable upon the facts. We are satisfied that the trial court did not abuse its discretion in determining that there was excusable neglect in the instant case.

There is no merit in appellant's contention that there was no sufficient affidavit of merits. The proposed answer of defendant was served with the motion to vacate the default. Said answer denied the material allegations of the complaint

and also alleged that defendant estate was the owner of the property in controversy.

In *Shively* v. *Kochman,* 23 Cal.App.2d 420, the court said, at page 422 [73 P.2d 637] : ''An affidavit of merits was filed by the defendants' attorney, and complaint is made that this also was insufficient. However, one of the defendants verified the answer mentioned, which denied the material allegations of the amended pleading. The answer supplied any deficiencies in the affidavit, and such has been held to be sufficient. (*Waybright* v. *Anderson,* 200 Cal. 374 [253 P. 148].)'' So, even if the affidavit of merits were insufficient (which we do not believe it was), the verified answer supplied any deficiencies in the affidavit.

Appellant's next contention is that the trial court abused its judicial discretion and erred in striking out evidence and rendering judgment in favor of defendant.

Plaintiff and appellant through the records of the county recorder introduced into evidence certain deeds and other documents relating to the title of the property in controversy. These records showed that in 1931 G. Borden Yount was the owner of the property and that by deed dated November 19, 1931, he conveyed a one-half interest in and to a certain parcel thereof to W. K. Ephriam. On May 28, 1936, Yount and Ephriam secured a decree quieting their title to the property as against the Bank of America National Trust and Savings Association. By deed dated May 28, 1936, G. Borden Yount conveyed his one-half interest in the property to his daughter, Adrienne Blodgett (Grey). On August 17, 1937, Adrienne Blodgett and Ephraim secured a decree quieting their title to said property as against the Bank of California and others. By deed dated May 1, 1939, Ephriam conveyed his one-half interest to Adrienne Blodgett. Appellant also introduced into evidence a deed dated October 11, 1939, from Adrienne Blodgett to Henry Yount conveying the property owned by Yount and Ephriam in 1936, it being recited in said deed that it was made ''by way of security only''; and also introduced a deed from Adrienne Blodgett to H. A. Yount dated October 20, 1939, covering the same property but without any recital as to security. In December, 1944, one Fred Watwood obtained a judgment against G. Borden Yount which judgment was recorded on January 5, 1945, and which judgment was assigned to plaintiff and appellant.

As hereinbefore stated, plaintiff and appellant sought by

this action to have it decreed that G. Borden Yount was the real owner of the property at the time the judgment of appellant's assignor was recorded "and that said Adrienne M. Grey at the said time, and at the time of her death, held the same and the title thereto in secret trust for said G. Borden Yount" and that appellant be decreed to have a lien against said real property. Appellant did not allege any fraud on the part of G. Borden Yount or his daughter, Adrienne M. Grey. At one point in the trial counsel for appellant stated: "Your Honor, the whole proposition is, what I am trying to show is that G. Borden Yount was the actual owner of this property and that Mrs. Grey, who is the same person as Adrienne Blodgett, took title in her name, which later was inventoried in her estate but is in fact the property of G. Borden Yount. In other words, she was the mere receptacle or agent holding title. The consideration was paid by Yount, the deed was at his request, and that is the whole gist of it." And at another point the following occurred: "THE COURT: I can't imagine how you are going to establish fraud here or a trust in favor of the plaintiff against the deceased daughter of the original owner of this property. MR. KLEEFISCH [counsel for appellant] : It is not so much a question of fraud as it is that the property belonged to him and the title was taken in her. MR. GLICKFELD [counsel for respondent] : No, your Honor, this is an action by a creditor."

Appellant claims that she was not allowed to prove through Ephriam the facts and circumstances under which the deeds from G. Borden Yount to Adrienne Blodgett, his daughter, in 1936 and from the daughter to Henry Yount in 1939 were made and the quiet title action brought against the Bank of California. As illustrative of this, appellant quotes the following extract from the record: "Q. Now, Mr. Ephriam, with reference to the deed from G. Borden Yount to Adrienne Blodgett, you know of your own knowledge the circumstances under which the deed was executed by G. Borden Yount? . . . A. I do. THE COURT: That deed ran to whom as grantee? MR. KLEEFISCH: To Adrienne Blodgett. She is the same lady as Mrs. Grey. MR. GLICKFELD: If it please the Court, I object to any testimony along that line as hearsay, unless it can be established that any parties involved in this action were present at any conversations. The question is omnibus in its scope." However, the record shows that there was no ruling by the court and that appellant's counsel then withdrew the question.

■ Appellant also contends that the following extract quoted from the records shows error by the trial court: "MR. KLEEFISCH: Q. Now, with reference to the deed from G. Borden Yount to Adrienne Blodgett, and that is the deed described in Book 2954, page 415, May 28, 1946, you know of your own knowledge the circumstances under which that deed was executed by G. Borden Yount? A. [by Mr. Ephriam] It was necessary to bring another action to remove those liens and clouds, and Yount didn't want it in his name, so he conveyed it to his daughter, that she could join with me in bringing that action to quiet title against those liens and judgments. There were several there at the time, amounting to small amounts, that had to be removed before we could have a merchantable title to the property. MR. GLICKFELD: I move to strike that as a conclusion of the witness. THE COURT: Yes, motion granted." It requires no argument or citation of authority to prove that the answer of the witness was a conclusion and therefore properly stricken out by the court.

■ Appellant also quotes the following as error on the part of the trial court: "Q. With reference to the deed from Adrienne Blodgett to Henry A. Yount, you know of your own knowledge the facts and circumstances surrounding the making and execution of such deed? A. [by Mr. Ephriam] I do. MR. GLICKFELD: I am going to object to the question, I cannot see the connection of a deed from the deceased here, Adrienne Blodgett to Henry Yount. There is no connection whatsoever. I think we are getting far afield, your Honor. THE COURT: I can't see the connection, of course, and naturally, the question is too general, calls for a conclusion of the witness. Objection sustained. The witness can't construe the meaning of the documents." We believe that the court correctly stated the reasons why the objection should be sustained.

■ Appellant complains that she was not permitted to make her proof as to the circumstances surrounding the transfers from Yount to his daughter; but the record shows that when objections were properly sustained to the questions in the form in which they were propounded, her counsel did not ask questions calling for the declarations of G. Borden Yount nor did he make any offer of proof for the record. Appellant's counsel apparently accepted the rulings of the court as final and failed thereafter to ask questions in proper form, and appellant therefore is not in a position to urge on appeal that proper evidence was improperly excluded. Had the

questions been properly propounded, appellant would have been entitled to prove the declarations of G. Borden Yount, not in disparagement of his deed but to show his intent on the question of delivery. As was clearly stated by this court in *Dinneen* v. *Younger*, 57 Cal.App.2d 200, at page 205 [134 P.2d 323] : "It is also clear that where a valid delivery is established, subsequent acts and declarations of the grantor in disparagement of his deed, outside the presence of the grantee, are not admissible. Such declarations or acts are hearsay and self-serving. (See cases cited *infra*.) But when the very question presented is whether or not the alleged grantor intended a valid delivery—that is, intended to divest himself of title—his declarations and acts made and done outside the presence of the grantee after physically delivering possession of the deed to the grantee or to a third person, are admissible as bearing upon the vital question of intent. This problem has frequently been before the courts of this state. The leading case is *Williams* v. *Kidd*, 170 Cal. 631 [151 P. 1, Ann.Cas. 1916E 703], where an exhaustive review of the authorities is to be found." We therefore conclude that the trial court did not err in the rulings made nor in rendering judgment in favor of respondent.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.