[Civ. No. 20698. Second Dist., Div. Three. June 8, 1955.]

KENNETH SMITH et al., Appellants, v. LOS ANGELES BOOKBINDERS UNION NO. 63 et al., Respondents.

488

Perry Bertram for Appellants.

Gilbert, Nissen & Irvin for Respondents.

ASHBURN, J. pro tem.*—Action for libel. Plaintiffs appeal from judgment for defendants entered after demurrer to amended complaint sustained without leave to amend; they also appeal from an order relieving defendants from default in demurring or answering to the amended complaint.

The appeal from the judgment presents the question whether the amended complaint brought into the case a new cause of action after the statute of limitation had run upon it. And the debate revolves around the matter of pleading special damage. Plaintiffs argue that the alleged defamatory matter is a libel *per se* and defendants say it is neither libelous on its face nor susceptible of the meanings ascribed to it in the innuendo, but if it is held to be in the category of a libel *per*

---

*Assigned by Chairman of Judicial Council.

*quod* the original complaint was fatally defective for want of averment of special damage and the inclusion of such averments in the amended complaint introduced an entirely new cause of action after the statute had run. These contentions require primarily an analysis of the original complaint.

It alleges that plaintiffs, a copartnership, are engaged in business under the name of S. & G. Bindery; that defendant Los Angeles Bookbinders Union No. 63 is a labor union and defendant George S. Smith its secretary; by inference that plaintiffs' business is that of bookbinding. The alleged libel consists of an excerpt from a letter sent by defendants on or about October 3, 1952, to numerous existing and potential customers of plaintiffs, which excerpt reads as follows: " 'In almost any Trade Bindery, with the exception of the S and G, the employer gives a bid on your job, not based on the scale and hours his employees work, but on his equipment, quality and service—but not so the S and G Bindery.

"Our scale for journeywomen is $1.651 per hour, 7½ hours per day. The S and G Bindery scale is from 75 cents to $1.45, 8 hours a day—only one employee receiving the $1.45. Most of his employeees receive from 75 cents to $1.15.' " It is alleged that the letter was sent to these persons maliciously and with intent to injury plaintiffs in their reputation and in their occupation and business. By way of innuendo it is averred that the meaning intended to be conveyed and actually conveyed to readers of the letter was ". . . that the only basis upon which the Plaintiffs estimate the price of work to be performed for its customers is sub-standard rates of pay alleged to be paid to their employees; that the Plaintiffs have inferior equipment; that the Plaintiffs turn out work of inferior quality; that the Plaintiffs do not give to their customers the same service which the customers might expect of other trade binderies, but on the contrary, give inferior and poor service; that Plaintiffs pay sub-standard wages to their employees and require their employees to work under sub-standard working conditions; and that customers who place their work with the Plaintiffs could expect that such work would not be of high quality, but would be of inferior quality and that the Plaintiffs could not and would not give to such customers the same service that they could obtain from other trade binderies." Again it is alleged that the publication of the letter was for the purpose ". . . of exposing the Plaintiffs to hatred, contempt, ridicule and obloquy and for the purpose of injuring them in their trade, business

and occupation." The *ad damnum* allegation consists of paragraph XI, reading as follows: "Plaintiffs have been injured in thier reputation and in their trade, business and occupation by reason of the publication by the Defendants and each of them of said false and defamatory matters in the sum of One Hundred Thousand Dollars ($100,000.00)." Plaintiffs pray for ". . . general damages in the sum of $100,000.00, for punitive and exemplary damages in the further sum of $100,000.00, for costs . . . and for all proper relief." Defendants having answered, the cause was reached for trial and defendants objected to the introduction of any evidence upon the ground that the complaint did not state a cause of action; the objection was sustained with leave to plaintiffs to amend. Counsel seem to agree that this was ". . . upon the ground that the complaint did not allege a libel on its face and wholly failed to allege any special damages as required by Section 45a of the Civil Code." In due course an amended complaint was served and filed on May 17, 1954. The same excerpt from the same letter was alleged as the libel and the substantial changes carried into the amended pleading were these: By way of further inducement it was alleged to be a fact, known to defendants, that plaintiffs served many printing firms in the Los Angeles area, particularly those having printing contracts with the United States government and its military branches; that all those firms required their binding work to be of excellent quality, delivered promptly and without delays; that any statements raising a question or doubt as to the quality of work, service or equipment of the plaintiffs would cause such firms to believe they could not depend upon receiving good quality or service on work placed with plaintiffs and that breakdown of equipment would occur, delaying deliveries and jeopardizing their own general business and their government contracts; and would cause such concerns to withhold their business from plaintiffs. The innuendo was enlarged to allege a further meaning that plaintiffs ". . . require their employees to work under sub-standard working condition; that customers who place their work with the plaintiffs could expect that such work would not be of high quality, but would be of inferior quality and that the plaintiffs could not and would not give to such customers the same service that they could obtain from other trade binderies; and that the plaintiffs in holding themselves out as offering good quality and service and having good equipment, were guilty of misrepresentation and

sharp and dishonest business practice." Paragraph XII alleges damages in the same language as paragraph XI of the original complaint, above quoted. Paragraph XIII is new. "As a direct and proximate result of the publication by the defendants of the statements contained in their letters of October 3, 1952, as aforesaid, plaintiffs lost one of their largest accounts, to-wit, Gartner Printing and Lithograph Co., with whom, during the year immediately preceding said publication, they had been doing an average business of approximately $4,000.00 per month, to their damage to the date of this amendment in the approximate sum of $64,000.00. Plaintiffs are informed and believe and upon information and belief allege that at least one other account, to-wit, Gehling Printing and Lithography, ceased doing business with plaintiffs as a direct and proximate result of the statements contained in said letter as aforesaid, to plaintiffs damage in the sum of approximately $2,000.00." The prayer is for ". . . general damages in the sum of $100,000.00, for special damages in the further sum of $66,000.00, for punitive and exemplary damages in the further sum of $100,000.00," and for costs and all proper relief.

After defendants had been relieved of their default with respect to the amended complaint they demurred upon general and special grounds. The general demurrer was overruled but the special demurrer based on the statute of limitation was sustained and judgment for defendants rendered, reciting that the court did ". . . sustain said demurrer without leave to amend upon the ground that the alleged cause of action set forth in the plaintiffs' amended complaint is barred by the provisions of Section 340, subdivision 3, of the Code of Civil Procedure."

Whether a new cause of action was included in the amended complaint depends first upon a determination of the nature of the alleged libel, whether it is one *per se* (as contended by plaintiffs' counsel) or is at best a libel *per quod* (as argued by the defense). If the letter is libelous on its face, there was no new cause of action introduced by the amendment for all the essentials of a libel *per se* are repeated and new matter becomes mere surplusage.

 The question of whether a publication is libelous *per se* must be determined by the court as a matter of law. (*Howard* v. *Southern Calif. etc. Newspapers,* 95 Cal.App.2d 580, 584 [213 P.2d 399] ; *Peabody* v. *Barham,* 52 Cal.App.2d 581, 584 [126 P.2d 668].) The language . . . is to be measured not

so much by its effect when subjected to the critical analysis of a mind trained in the law, but by the natural and probable effect upon the mind of the average reader." (*Bates* v. *Campbell*, 213 Cal. 438, 442 [2 P.2d 383].) ▮ It ". . . is the duty of the court to give the language used the natural and popular construction of the average reader, not the critical analysis of a mind trained in technicalities." (*Sullivan* v. *Warner Bros. Theatres, Inc.*, 42 Cal.App.2d 660, 662 [109 P.2d 760].) ▮ In this inquiry the innuendo does not count. (*Washer* v. *Bank of America*, 21 Cal.2d 822, 828 [136 P.2d 297, 155 A.L.R. 1338]; 16 Cal.Jur. § 58, p. 89.) ▮ Although the statutory definition of libel (Civ. Code, § 45), ". . . has been held to include almost any language which, upon its face, has a natural tendency to injure a person's reputation, either generally, or with respect to his occupation" (*Bates* v. *Campbell, supra*, 213 Cal. 438, 441), it is not defamatory to accuse one of doing what he may legally and properly do (*Sullivan* v. *Warner Bros. Theatres, Inc., supra*, 42 Cal.App.2d 660, 663; 16 Cal.Jur. § 26, p. 53.) ▮ Since labor disputes ". . . normally involve considerable differences of opinion and vehement adherence to one side or the other, a necessarily broad area of discussion without civil responsibility in damages is an indispensable concomitant of the controvery." (*Emde* v. *San Joaquin County etc. Council*, 23 Cal.2d 146, 155, 156 [143 P.2d 20].) ▮ Moreover, when the alleged defamatory matter is susceptible of an innocent interpretation it is not actionable *per se*. (*Washer* v. *Bank of America, supra*, 21 Cal.2d 822, 828; *Howard* v. *Southern Calif. etc. Newspapers*, 95 Cal.App.2d 580, 584 [126 P.2d 668]; *Babcock* v. *McClatchy Newspapers*, 82 Cal.App.2d 528, 538 [186 P.2d 737]; *Bates* v. *Campbell, supra*, 213 Cal. 438, 442; *Peabody* v. *Barham, supra*, 52 Cal. App.2d 581, 584.) In the last cited case Mr. Presiding Justice Moore said, at page 584: "When offending language is susceptible of an innocent interpretation it is not actionable *per se*. ▮ Neither will language be given a libelous character unless such is its plain and obvious import, (*Dillard* v. *Shattuck*, 36 N.M. 202 [11 P.2d 543, 546].) Neither is it actionable *per se* if the offending language has more than one meaning. (*Ruble* v. *Kirkwood*, 125 Ore. 316 [266 P. 252]; *Manley* v. *Harer*, 73 Mont. 253 [235 P. 757, 759].)"

▮ The plain import of the publication in question is that plaintiffs run a nonunion shop and pay wages below the established union scale; that they base their prices upon

this lower cost of production and do not stress as their selling point the argument which unionized competitors must advance,—superior equipment, quality of work and service. This letter is an appeal to customers, actual and prospective, to direct their business to a union shop; under the authorities this is a legitimate means to a lawful objective. (*Imperial Ice Co.* v. *Rossier*, 18 Cal.2d 33, 35 [112 P.2d 631]; *Emde* v. *San Joaquin County etc. Council, supra,* 23 Cal.2d 146, 155, 158, 159.) The letter was plainly susceptible to this construction by the persons to whom published, and it is an innocent meaning. The extract from the letter, standing alone, is not libelous on its face.

Though insisting that he had alleged a libel *per se,* counsel for appellant bowed to the court's ruling and included in the amended complaint paragraph XIII (above quoted) alleging specific items of special damage proximately caused by the alleged libel. Respondents' counsel argue that this is the heart of the case when the libel is *per quod,*—not actionable *per se.* ▪▪▪ And it is true that no action can be maintained without an averment of special damage. Civil Code, section 45a: "A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face. Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof. Special damage is defined in Section 48a of this code." Section 48a, subdivision 4: "[*Definitions.*] As used herein, the terms 'general damages,' 'special damages,' 'exemplary damages' and 'actual malice,' are defined as follows:

"(a) '*General damages*' are damages for loss of reputation, shame, mortification and hurt feelings;

"(b) '*Special damages*' are all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel, and no other . . ." ▪▪▪ It is well settled that special damage must be averred with particularity. (*Pridonoff* v. *Balokovich,* 36 Cal.2d 788, 791-792 [228 P.2d 6]; *Shook* v. *Pearson,* 99 Cal. App.2d 348, 351-352 [221 P.2d 757].) And this the original complaint did not do. ▪▪▪ The allegation that plaintiffs "have been injured . . . in their trade, business and occupation by reason of the publication . . . in the sum of One

Hundred Thousand Dollars ($100,000.00)'' is not enough. But that does not mean that it was not enough to afford basis for amendment, especially in the light of the fact that the complaint alleged five times that the letter, addressed to existing and prospective customers of plaintiffs, was aimed at injury to their business. ▮ Special damage is an essential element of a libel *per quod,* and a sufficient allegation of same is requisite to a good complaint. But the omission or inclusion of that allegation pertains to only one element of the cause of action.

▮ When the basic facts are the same a shifting from one theory of liability to another is not the substitution of a new cause of action. (*Oberkotter* v. *Woolman,* 187 Cal. 500, 504 [202 P. 669]; *Wennerholm* v. *Stanford Univ. Sch. of Med.,* 20 Cal.2d 713, 718 [128 P.2d 522, 141 A.L.R. 1358]; *Barr* v. *Carroll,* 128 Cal.App.2d 23, 33-34 [274 P.2d 717].)

▮ The absence of a vital allegation in an original complaint, resulting in the statement of no cause of action at all, does not preclude an amendment to incorporate that indispensable element of the action. The correct view is well stated in 2 Witkin's California Procedure, section 606, page 1619: ''If the original complaint *fails to state a cause of action,* because of defective pleading of the elements, it is in a sense true that the amended pleading states a new cause of action. But there is no objection to an amendment of this kind, for this is the typical next step when a general demurrer is sustained with leave to amend. The important point is that the amended complaint merely improves the formerly defective statement of the same cause of action; there is no change in the nature of the case and therefore no surprise or prejudice to the defendant. (See *Rauer's Law etc. Co.* v. *Leffingwell* (1909), 11 Cal.App. 494, 495 [105 P. 427]; *Ruiz* v. *Santa Barbara Gas etc. Co.* (1912), 164 Cal. 188, 194 [128 P. 330]; *Woods* v. *Cook* (1936), 14 Cal.App.2d 560, 562 [58 P.2d 965], *infra,* § 613.)'' ▮ Great liberality is indulged in this matter of amendment to the end that lawsuits may be determined upon their merits. (*Klopstock* v. *Superior Court,* 17 Cal.2d 13, 19 [108 P.2d 906, 135 A.L.R. 318]; *Frost* v. *Witter,* 132 Cal. 421, 424 [64 P. 705]; *Barr* v. *Carroll, supra,* 128 Cal.App.2d 23, 26; *Hanna* v. *Hirschhorn,* 112 Cal.App. 438, 440-442 [296 P. 891].) But the solution of every problem of whether a new cause of action has been inserted by amendment after the running of the statute of limitation must be

solved by applying to the specific facts a correct conception of what constitutes a cause of action.

A cause of action is the right to secure redress for violation of an obligation owing to the claimant. Though phrased in varying ways this is the result of the authorities. In *Frost* v. *Witter, supra,* 132 Cal. 421, 426, the court said: "The action therefore springs from the obligation, and hence the 'cause of action' is simply the obligation." Again: "The 'cause of action' is therefore to be distinguished, also, from the 'remedy,'—which is simply the means by which the obligation or the corresponding action is effectuated,—and also from the 'relief' sought. (Pomeroy on Pleading and Practice, § 453.)" *Klopstock* v. *Superior Court, supra,* 17 Cal.2d 13, at page 20: "In determining whether a wholly different cause of action is introduced by the amendment technical considerations or ancient formulae are not controlling; nothing more is meant than that the defendant not be required to answer a wholly different legal liability or obligation from that originally stated. As the court says in the Frost case (*supra,* p. 426), for the purpose of determining whether amendment is possible, the 'cause of action' referred to as furnishing the test means only the legal obligation which it is sought to enforce against the defendant. Other courts have used almost identical language; the test is not whether under technical rules of pleading a new cause of action is introduced, but rather, the test is whether an attempt is made to state facts which give rise to a wholly distinct and different legal obligation against the defendant. The power to permit amendment is denied only if a change is made in the liability sought to be enforced against the defendant. (See *Harriss* v. *Tams,* 258 N.Y. 229, 242 [179 N.E. 476].)" *Day* v. *Western Loan & Bldg. Co.,* 42 Cal.App.2d 226, 231 [108 P.2d 702]: "It is well-settled that, where the original complaint has been filed within the statutory period, an amended complaint may be filed after the statute has run as long as it does not state a new or different cause of action from that appearing in the original complaint. Stated another way, if the original complaint defectively states a cause of action, it may be amended after the running of the statute as long as the cause of action stated in the amended pleading can trace its descent from the original pleading."

Section 43, Civil Code, declares that every person has ". . . the right to protection from . . . defamation. . . ." Libel, as defined in section 45, is a violation of that right;

and that violation is plaintiffs' cause of action. If libelous on its face recovery may be had without any specific showing of damage; if not libelous on its face special damage must be averred and proved. But whatever may be the procedural or evidentiary burden resting on plaintiff his basic cause of action is the violation of his right to be free from defamation. If the same publication be the gist of the original and the amended complaint there can be no departure so far as identity of cause of action is concerned.

If there had been no reference to injury to trade, business and occupation in the original complaint that fact could not have precluded the averments of special damage in the amendment. But the original allegation was sufficient to withstand a *general* demurrer under the ruling in *Oberkotter* v. *Woolman, supra,* 187 Cal. 500, 504. There the allegation was that plaintiff ". . . has lost, and will continue to lose and be deprived of, great gains and profits which would otherwise have accrued to him in his calling, occupation, and profession, to his damage in the sum of fifty-five thousand dollars." And the court said: "Here was a sufficient allegation of general and special damages which, if proved, would entitle the plaintiff to recover." Certainly the amended complaint at bar "can trace its descent from the original pleading" (*Day* v. *Western Loan & Bldg. Co., supra,* 42 Cal.App.2d at p. 231).

*Eatwell* v. *Beck*, 41 Cal.2d 128, 135-136 [257 P.2d 643], affords a persuasive analogy. That was an action for deceit. Of course, fraud without damage is not actionable at law and such an averment is essential to a good complaint. (*Munson* v. *Fishburn,* 183 Cal. 206, 220 [190 P. 808]; *Maynes* v. *Angeles Mesa Land Co.,* 10 Cal.2d 587, 590 [76 P.2d 109]; 12 Cal.Jur. § 69, p. 813.) The exclusive measure of Eatwell's recovery was his out-of-pocket loss under section 3343, Civil Code; he had alleged certain damage which was not recoverable; confronted by motion for nonsuit he sought leave to reopen and to amend his complaint to aver the proper damages. This was denied and held to be erroneous. It was as if no damage had been originally alleged and an amendment to incorporate a proper allegation was held to be proper and indeed not to be denied.

The contention that a new cause of action was brought into the case by paragraph XIII of the amended complaint is without merit and the judgment in favor of defendants must be reversed.

This is true notwithstanding respondents' contention that the letter in question is not susceptible of any of the interpretations alleged in the innuendo of the amended complaint and that the demurrer should have been sustained in any event (see *Southall* v. *Security Title Ins. etc. Co.*, 112 Cal. App.2d 321, 323 [246 P.2d 74], as to the propriety of considering such contention). We cannot say that the letter in question will not bear any of the interpretations alleged in the innuendo and hence we cannot hold, as matter of law, that it was not libelous *per quod*.

The order vacating defendants' default before any judgment had been rendered against them is not separately appealable, as it is neither a final judgment nor an order made after final judgment; but it is reviewable upon this appeal from the judgment subsequently entered. (*Bernards* v. *Grey*, 97 Cal.App.2d 679, 683 [218 P.2d 597]; *Turner* v. *Follmer*, 84 Cal.App.2d 815 [191 P.2d 777].) Though the appeal from the order must be dismissed, the claim should be examined; if it is sustained the judgment must fail upon that additional ground and there can be no further proceedings in the action other than a hearing upon application for default judgment.

The order granting defendants relief under section 473, Code of Civil Procedure, grew out of the following circumstances. When the trial judge sustained the objection to any evidence under the original complaint it was expressly understood that time for pleading to the amended complaint (under Code Civ. Proc., § 432) would be 10 days. In due course the amended complaint was served and filed, on May 17th or 18th, 1954. On May 28, 1954 defendants served and filed a motion to strike the said complaint from the files, same being noticed for hearing on June 3d; but they did not serve or file any demurrer or answer thereto. Plaintiffs' attorney made no point of this at the time, he never called on his opponents to plead further, and told them nothing about any intent to seek a default judgment. On June 1st, four days after the motion was served, defendants' default was entered upon plaintiffs' request. On June 3d, the date set for hearing the motion to strike in department 35 of the court, counsel for defendants discovered that the attorney for plaintiffs was in department 34 for a hearing upon application for a default judgment. Thereupon the motion to strike was placed off calendar as was the application for default judgment. Four days later defendants served and filed their motion for relief under section 473, which was

supported by affidavit and copies of proposed demurrer and answer. Same was heard and granted on June 15th, and demurrer and motion to strike set for hearing on June 24th; they were reached on June 29th at which time, after argument, the demurrer was sustained without leave to amend and the motion to strike went off calendar.

Defendants' counsel, in support of their motion for relief under section 473, relied upon certain technical grounds, which are without merit, and upon a claim of mistake of law on their part. That mistake consisted, so they say, of the conclusion reached after careful examination of the law that they would waive any right to strike the amended complaint if they answered or demurred at the same time and that the motion would stand as a demurrer and prevent any default under sections 432 and 585, subdivision 2, Code of Civil Procedure. They make the same argument on appeal but cite no California case so holding. In view of the prevailing practice of filing and hearing motions to strike and demurrers at the same time (see Los Angeles County Superior Court rule 7, § 3; and Rules for Superior Courts, rule 3(c), prescribed by Judicial Council), the experience and ability of counsel, it would be difficult to understand the ruling of the judge in vacating the default (see Witkin on California Procedure, § 50, p. 2102; *Security Truck Line* v. *City of Monterey,* 117 Cal.App.2d 441, 445-446 [256 P.2d 366, 257 P.2d 755]) were it not for other considerations immediately apparent. ██ The matter of relief under section 473 resides in the discretion of the trial judge whose action will not be disturbed unless an abuse of discretion clearly appears. (*Beard* v. *Beard,* 16 Cal.2d 645, 647 [107 P.2d 385].) ██ Speaking of an order setting aside a default judgment the court said in *Shearman* v. *Jorgensen,* 106 Cal. 483 [39 P. 863]: "It is only in exceptional cases that orders of that kind will be reversed by this court . . .", and in *Berri* v. *Rogero,* 168 Cal. 736, 740 [145 P. 95]: "The law does not favor snap judgments. The policy of the law is to have every litigated case tried upon its merits, and it looks with disfavor upon a party who, regardless of the merits of his case, attempts to take advantage of the mistake, surprise, inadvertence, or neglect of his adversary. Where a party in default makes seasonable application to be relieved therefrom, and files an affidavit of merits alleging a good defense, and the plaintiff files no counter affidavit and makes no showing that he has suffered any prejudice or that injustice will result

from the trial of the case upon its merits, very slight evidence will be required to justify a court in setting aside the default. A broad discretion is allowed to courts in granting relief, against default, and it is in cases only where the lower court has abused its discretion that the appellate court will reverse its action.'' ▇▇▇ The quiet speed of plaintiffs' attorney in seeking a default judgment without the knowledge of defendants' counsel is not to be commended. Volume 2, Witkin California Procedure, section 59, page 1694, says: ''There is no statutory or rule requirement that the plaintiff's attorney notify the defendant's attorney (if known) that he intends to take a default. But failure to do so will usually be a sufficient ground for setting the default aside on motion under C.C.P. 473.'' Defendants, as plaintiffs' counsel well knew, were actively engaged in contesting the case, challenging the sufficiency of the publication to constitute a libel—(we have held it not to be libel *per se,* and there is considerable room for doubt as to whether it is susceptible of many of the implications alleged in the amended complaint)—and lastly they had on file a verified answer to the original complaint which denied its principal allegations and adequately averred two good defenses, truth and privilege. This fact, coupled with the other circumstances already mentioned, adequately justified the court's ruling in favor of a trial on the merits.

▇▇ In *Gray* v. *Hall,* 203 Cal. 306 [265 P. 246], the question arose as to the validity of entry of default for failure to answer an amended complaint. Holding that the default was improperly entered, the court said at pages 310-311: ''It has been generally held that where a plaintiff amends his declaration or complaint so as to change the cause of action, or add a new one, it constitutes an abandonment of the original issues, and judgment by default may be taken against the defendant if he fails to file a new or amended answer or plea within the time allowed therefor, notwithstanding the original answer or plea is still on file. (34 C.J. 164, § 375d, and authorities there cited.) This rule is without application, however, where the amendment is merely as to formal or immaterial matters, and does not change the cause of action; *nor does it apply where the original plea or answer set forth a sufficient defense to the declaration or complaint as amended.''* (Emphasis added.) At page 313, quoting from a Minnesota case: '' 'In short, when a complaint is amended after answer, the defendant is not bound to answer

*de novo.* He may do so if he chooses; but, if he does not elect to do so, his original answer stands as his answer to the amended complaint; and in such case he will not be in default except as to the additional facts set up in the amended complaint, and not put in issue by the answer. . . .' '' This *Gray* case was cited with approval in *Drotleff* v. *Renshaw,* 34 Cal.2d 176, 182 [208 P.2d 969], and was quoted and applied in *Steinbauer* v. *Bondesen,* 125 Cal.App. 419, 428 [14 P.2d 106]. The amended complaint herein did not state a new cause of action; the answer to original complaint did allege good affirmative defenses; the rule of *Gray* v. *Hall* was pertinent and of itself fully justified the ruling relieving defendants of default.

The judgment is reversed. The purported appeal from the order vacating defendants' default is dismissed.

Wood (Parker), Acting P. J., concurred.

Vallée, J., concurred in the judgment.