[No. 19297. Department One. — January 11, 1894.]

## A. L. BURBANK, RESPONDENT, *v.* L. W. DENNIS ET AL., APPELLANTS.

CORPORATIONS—FIDUCIARY RELATION OF PROMOTER.—A promoter of a corporation who brings about its organization and aids in procuring subscriptions thereto is considered in law as occupying a fiduciary relationship towards the corporation and its stockholders.

ID.—SALE OF PROPERTY TO THE COMPANY—DUTY OF PROMOTER.—A promoter of a corporation or joint stock association may sell property thereto, but it is incumbent upon him, as a person occupying a fiduciary position, to make full and fair disclosure of his interest and position with respect to the property, and not to make any false representations as to its cost price.

ID.—FRAUD OF PROMOTER— ELECTION OF REMEDY.—Transactions in which the promoters of a corporation suppress or misrepresent material facts, or otherwise deceive the corporation, or corruptly control its action, are fraudulent, and the company may elect either to set aside such transaction, or to recover the promoter's secret profits.

ID.—FRAUD UPON STOCKHOLDERS—KNOWLEDGE OF DIRECTORS—RATIFICATION—WAIVER.—Where fraud is practiced upon the stockholders by the promoters of the corporation, knowledge of it by the directors is not knowledge to the stockholders, and the fraud practiced upon the stockholders cannot be ratified or waived by the directors.

ID.—CORPORATION FOR PURCHASE AND SALE OF LANDS—FRAUD OF PROMOTERS—ACTION BY STOCKHOLDERS.—Where a corporation was organized for the purchase and sale of lands by promoters of the corporation

having contracts of purchase and deeds of various parcels of land which were conveyed to the corporation, and the promoters falsely reported to the corporation that they had paid a much larger sum on account of the purchase price of the lands than they had in fact paid, an action will lie at suit of a stockholder, after previous demand upon the corporation to commence the suit and a refusal upon its part to do so, to recover judgment for the difference between the amount actually paid and the amount reported to the corporation, as being the property of the corporation unlawfully withheld by the promoters thereof.

ID.—PARTIAL PAYMENTS—DEFERRED PAYMENTS.—The fact that partial payments only were made upon the various tracts, and that the deferred payments were secured by mortgage upon the land, is immaterial, and the case stands as though it were a cash transaction throughout.

ID.—VARIANCE—COMPLAINT—FINDINGS—REPRESENTATIONS AS TO FIRST PAYMENTS—ORIGINAL COST PRICE.—There is no substantial variance between the complaint and the findings, merely upon the ground that the complaint relies for judgment upon false representations as to the amounts of first payments made for the land, and that the findings indicate a recovery upon the theory of false representations as to the original cost price of the property, the fraud practiced by the defendants as confidential agents of the parties complaining being the ground of recovery, and the measure of damages relied upon in the complaint and recognized by the judgment being the same.

ID.—EVIDENCE—ADMISSIONS OF PROMOTER.—A promoter of the corporation, being an active party to the litigation, his statements and admissions pertaining to the subject matter of the action, wherever and whenever made, are competent evidence against him.

ID.—TESTIMONY OF REPORTER—UNSIGNED DEPOSITION—READING FROM NOTES.—Where an attempt was made to take the deposition of the promoter of the corporation who is a party defendant, prior to the trial, but, after the examination was had and his testimony was taken down and transcribed by a phonographic reporter, he either neglected or declined to subscribe to the same, the reporter, though not having a definite and well-defined recollection of the statements so made after having refreshed his recollection as far as possible from the writing, will be allowed to read the contents of the notes to the court.

ID.—ACCOUNTING—PAYMENT TO PERFECT TITLE—PROFIT.—In an accounting had against a promoter of the corporation he should be credited with a sum paid to perfect the title of one of the tracts sold, and should only be charged with the profit actually realized upon a particular tract.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Wells, Monroe & Lee,* and *W. P. Gardiner,* for Appellants.

*Wilson & Lamme,* for Respondent.

GAROUTTE, J.—The plaintiff as a stockholder of the San Gabriel Valley Land and Water Company, a corporation, brought this action against L. W. Dennis, John P. Sanborn, Frederick D. Sanborn, and the San Gabriel Valley Land and Water Company to recover a large sum of money, claiming such moneys to be the property of the corporation defendant, unlawfully held by defendants John P. Sanborn and L. W. Dennis. Judgment was recovered for the sum of eighty-three thousand dollars and interest, and this appeal is prosecuted by defendant Dennis from the judgment and order denying his motion for a new trial.

The following allegations of the complaint give a general idea of the cause of action relied upon to support the recovery: "That during or about the month of March, 1887, the defendants, L. W. Dennis, John P. Sanborn and Frederick D. Sanborn, entered into an arrangement and agreement as promoters, for the purpose of organizing the said defendant corporation, with a view of purchasing certain lands in the said county of Los Angeles, which said lands were to be, after the organization of said corporation, conveyed to the same for the purpose of selling the same, and in which corporation the said defendants, Dennis and the Sanborns, were to become interested as stockholders; that the said defendant, Dennis, and the said Sanborns proceeded to procure contracts of purchase as aforesaid, of the said lands from the various owners of the same, and did so contract with Story, Stillson, and Hall for about 240 acres, with one Ames for about 200 acres, with one J. N. Clapp for about 70 acres, with L. L. Bradbury for about 200 acres, with one Gibbs for about 170 acres, with L. H. Titus for about 200 acres, with James Ford for about 50 acres; and according to the terms and conditions of the said various contracts, specified parts and portions of the purchase price of the same were to be paid in cash, and certain other parts and portions of such purchase price were to be deferred and were to be paid with certain specified rates of interest; that at all

times while the said defendants were procuring the said contracts for the purchase of said lands, they represented to the plaintiff and other of the proposed stockholders of the proposed corporation that they were acting for and on behalf of all the parties interested or to become interested in the said venture, and who were to become stockholders of such proposed corporation, and at all times held themselves out as the agents of the said proposed stockholders, who were the parties furnishing the money necessary for the purchase of the said lands."

The complaint further alleges that $200,000 was paid to Dennis and Sanborn by the prospective stockholders of the corporation defendant, and that contracts and deeds to these various parcels of land were taken in the name of John P. Sanborn, and partial payments made thereon from the aforesaid money.   It is further alleged that after the incorporation the lands were conveyed to said corporation defendant, and Dennis, for himself and his associates the Sanborns, reported to said corporation that they had paid on account of the purchase price of said lands $193,666.62, when in truth they had paid but $97,666.62.   Plaintiff asks judgment for the difference between the amount actually paid by said Dennis and the amount which he reported to the corporation that he had paid upon the purchase price.

As a salient point in the case, it must further be borne in mind that the contract price at which the syndicate of buyers, that was subsequently merged into the defendant corporation, was to take these various pieces of realty was the lump sum of $537,000, and the amount alleged to be retained by the defendants in no way affected the amount of the gross sum to be paid by the corporation for the lands; for the entire sum of $193,666.62 was charged to Dennis upon the purchase price of $537,000.   But it is claimed that the lands actually cost but $442,000, and consequently the defendants, as agents, retained of the corporation's money the overplus amounting to $95,000.   The fact that partial payments only were made upon the various tracts, and

that the deferred payments were secured by mortgage upon the land, seems to be entirely foreign to the matter under consideration, and as to the principles of law here involved, the case as made by the complaint stands before us exactly as though it were a cash transaction throughout, the corporation, acting through its agents, buying lands and paying $537,000 therefor, when the actual cost was only $442,000, the agents absorbing the difference. There is no question but that the foregoing facts outline a sound cause of action, and if the findings of the court and the evidence are in line with such theory, then plaintiffs should recover.

The findings of fact are considerably broader than the allegations of the complaint, but there is no substantial variance between the theory upon which the complaint is formulated and the theory upon which the recovery is had, as evidenced by the findings of the court. Upon inspection, it is readily perceived that they rest upon the same general lines. Even conceding that the complaint relies for a judgment upon false representations as to the amounts of first payments made, and that the findings tend to indicate a recovery upon the theory of false representations as to the original cost price of the property, yet it is practically the same thing. If the corporation was bound in law to pay $537,000 for the property, then it was bound in law to pay $193,666.62 when it did pay it. By both complaint and findings the fraud of Sanborn and Dennis practiced upon the prospective stockholders and the corporation is the keystone of the situation. Not alone is the fraud practiced, the material element in both complaint and findings, but it is fraud practiced by the defendants as the confidential agents of the parties complaining. Both complaint and findings assert a violation of confidential relations and a betrayal of the trust reposed in defendants by the parties dealing with them. The measure of damages relied upon in the complaint and recognized by the judgment is the same, and we think that the

presence of a substantial variance, as contended for by appellant's counsel, is not apparent.

We now pass to a consideration of the evidence, the findings and the general principles of law bearing on a question of the character here presented. Frederick D. Sanborn was not served with summons, and the only appellant in this case is L. W. Dennis, with whom alone we are called upon to deal. Some embarrassment arises from the fact that these various tracts of land during the pendency of the negotiations which led up to the formation of the corporation were valued in entirety at the lump sum of $537,000, and no valuation was placed upon them in severalty. And it was not until after the formation of the corporation, and at the time when Dennis made his report to the corporation showing the application of the $193,666.62, that any definite idea was had by the stockholders as to the valuation of this realty by parcels, and those valuations, it appears, were arbitrarily placed by Sanborn or Dennis, or both, in that report. From the general conduct of the original negotiations by the investors of this large sum of money it is apparent that land speculation was rife in Los Angeles county in those days; and haste in the culmination of this transaction was exercised at the expense of future trouble and embarrassments, which a little care and a little less haste would readily have averted.

We will summarize some of the facts which are beyond dispute: Dennis was a real estate agent selling on commissions; Sanborn was a speculator in land, of moderate means. Upon March 11, 1887, Sanborn, for himself and various relatives and friends, purchased the Stillson and Hall tract of land for $26,000, and took the deed in the name of his nephew, Frederick D. Sanborn. Upon April 4th he entered into a contract of purchase of the Clapp tract for $20,000, $1,000 cash, the papers being placed in escrow to await the examination of title. Upon April 5th he entered into a contract to purchase the Ames tract for $60,000, paying thereon

$5,000. Upon April 9th he entered into a contract of purchase of the Gibbs tract for $51,000, and paid thereon $5,000. At about the same time he procured either written or oral options for short periods upon the Ford and Bradbury tracts, but no contracts of purchase were entered into, no moneys paid, and the lands finally passed to the corporation at cost price, hence they are not involved here. Sanborn about this time also procured an oral option for thirty days upon the Titus tract for $187,000. As to the Stillson and Hall tract and the Clapp tract, Dennis was a stranger, but at least as to some of the other tracts he was an agent of the owners in these negotiations, and probably was also working in the interest of Sanborn. Sanborn was securing these lands for speculative purposes, with the intention of interesting eastern capitalists therein. But about the 20th of April Dennis suggested that home capitalists would interest themselves in the venture; the suggestion was acceptable, and thereupon negotiations with various parties began, which culminated on the thirtieth day of April in a written agreement. In this agreement, Dennis, Sanborn, and the other prospective stockholders of the corporation, in consideration of one dollar received each from the other, agreed to purchase these lands for $537,000, and to expeditiously organize a corporation to handle them. The interest of each party in the venture was specified therein, Sanborn taking a one-fourth interest and Dennis a one-fifth. Dennis appears to have been the moving spirit in the negotiations during these times, although Sanborn was near at hand, the agreement itself being drawn up by him. Sanborn in his testimony claims that dating from the twentieth day of April, Dennis was acting for these home capitalists; while Dennis insists that he was acting for Sanborn. The testimony seems to indicate that he was acting for all parties concerned, especially for himself. About the 5th of May it was determined that $200,000 would be required immediately to make first payments, and to keep alive Sanborn's contracts,

options, etc.; and soon thereafter that amount was raised and paid to Dennis to be applied to these purposes. The corporation was finally organized upon the twentieth day of May, and about June the 1st Dennis reported that he had paid $193,666.62 to Sanborn upon these lands; and in this report the particular amount that had been applied upon the purchase of each tract, and, also, the amount of the deferred payments upon each tract, and when due, were separately stated. The disposition by Dennis of this $193,666.62 caused the present litigation.

Cook on Stock and Stockholders, section 651, referring to the promoters of a corporation, says: "A promoter is one who brings about the incorporation and organization of a corporation. He brings together the persons who become interested in the enterprise, aids in procuring subscriptions and sets in motion the machinery which looks to the formation of a corporation. A promoter is considered in law as occupying a fiduciary relationship towards the corporation." This definition is approved in *Ex-Mission Land and Water Co.* v. *Flash*, 97 Cal. 610. As to events transpiring subsequent to April 20th, there is no question but that these defendants, Dennis and Sanborn, stood in the position of promoters of the corporation that was subsequently organized. That they were promoters is well evidenced by the facts already stated and numerous other circumstances, which it is not necessary here to detail. Appellant especially fills the test demanded of a promoter in every respect, and he himself testifies that as to all the things done and said by him, looking towards the transfer of this land, he was the agent of his codefendant, Sanborn; and upon this appeal we must agree with him as to such agency.

It appears to be conceded that the law bearing upon the facts of this case is well put by Mr. Justice Sharswood in *Densmore Oil Co.* v. *Densmore*, 63 Pa. St. 43; and the application of the principles of law there declared to the facts furnishes the legal solution to the present litigation.

In that case it is said: "There are two principles applicable to all partnerships or associations for a common purpose of trade or business, which appear to be well settled on reason and authority. The first is that any man or number of men, who are the owners of any kind of property, real or personal, may form a partnership or association with others, and sell the property to the association at any price that may be agreed upon between them, *no matter what it may have originally cost,* provided there is no fraudulent misrepresentation made by the vendors to their associates. They are not bound to disclose the profit which they may realize by the transaction. . . . . The second principle is that where persons form such an association, or begin or start the project of one, *from that time* they do stand in a confidential relation to each other and to all others who may subsequently become members or subscribers, and it is not competent for any of them *to purchase property for the purpose of such a company, and then sell it at an advance without a full disclosure of the facts."*

The first interrogatory that necessarily presents itself to our consideration is, Was Sanborn the owner of these various tracts of land upon April 20th? That being the date of the inception of the negotiations which terminated in the creation of the corporation, and the date from which the defendants occupied a position of trust and confidence towards those who subsequently became the stockholders of the corporation. As to the Titus tract, Sanborn was in no sense the owner of it. He had not paid a dollar towards its purchase, and had no word of writing to indicate any interest therein. It was bought with the corporation's money, and all transactions pertaining to the sale of it occurred subsequent to the said twentieth day of April. The profit of $25,000, charged to the corporation upon this tract is not justified in the law, and the corporation has been injured to that extent. It must be conceded that the Hall and Stillson tract, for the purposes of this case, was owned by Sanborn; and we also think the Clapp,

Ames, and Gibbs tracts had been purchased by him, and
were owned to such an extent, at least, as to establish
his status as the owner thereof prior to his becoming a
promoter within the rule declared in the Densmore Oil
Company case.   It may be fairly said that under his
contract of purchase he was the owner of these three
parcels of realty.   (See *Howell* v. *Budd*, 91 Cal. 342.)
Sanborn being the owner of these tracts prior to the
commencement of confidential relations with the com-
plainants, had the right to dispose of his property to
the corporation at any price he saw fit to ask and the
corporation saw fit to pay.   As the vice-chancellor said
in *Foss* v. *Harbottle*, 2 Hare, 490: "I begin the trans-
action at this time.   I have purchased land, no matter
how or from whom or at what price.   I am willing
to sell it at a certain price for a given purpose."   Of
course the fraud and deceit of the vendor, practiced
towards the parties contemplating the purchase, would
afford grounds for relief under any circumstances; but
the fixing of the amount of the purchase price by the
vendor is a matter in which he is entitled to the widest
latitude.   The valuation upon the various tracts of land,
as shown by Dennis' report to the corporation, does not
appear to be questioned, and by such valuation the
lands of Sanborn were transferred to the corporation
at a profit to him of $48,000, less $7,500, which he paid
to perfect the title to the Clapp tract.

While Sanborn had the right to dispose of his land
to the corporation at any figure upon which all parties
concerned might agree, yet such sale must be made
without any false representations upon his part.   (*Getty*
v. *Devlin*, 54 N. Y. 403; *Densmore Oil Co.* v. *Densmore*, 64
Pa. St. 43.)   As to false representations on the part of
the defendants, the court found that, as a consideration
and inducement for the prospective stockholders to
enter into the venture, "defendants John P. Sanborn
and L. W. Dennis represented to, and promised and
agreed with, each and all of the persons above men-
tioned, that all of such lands as they then had or might

thereafter acquire should be put in and conveyed to such proposed corporation at the same price and consideration as the said L. W. Dennis and John P. Sanborn had paid or agreed to pay therefor to the party or parties from whom they then had or might thereafter obtain the same." The evidence is entirely sufficient to support this finding. While many of the interested parties only testify generally to the understanding that all this property should pass to the corporation at cost price, and that they would not have participated in the venture if the fact had been to the contrary, yet the witnesses, Sterling and Burbank, testify directly to the statements of appellant Dennis made to them to that effect.

As to this branch of the case the conditions are these: Sanborn was the owner of several tracts of land on April 20th; at that time he and Dennis became the promoters of the defendant corporation; sold this property to the corporation, and at such sale represented that it was being sold at its original cost to them. The representation was false, and was made at a time when these parties were not dealing with each other as strangers at arm's length; but, on the contrary, at a time when they were closely allied in a joint venture and when all the duties and responsibilities resulting from confidential relations rested upon them; and a strict performance of those duties and responsibilities was inexorably demanded by the law. This principle is recognized in *New Sombrero Phosphate Co.* v. *Erlanger*, L. R. 5 Ch. Div. 73, and approved in Ewell's Evans on Agency, *284, in the following language: "A promoter is in a fiduciary relation to the company which he causes to come into existence. If he has a property which he desires to sell to the company, it is quite open for him to do so, but upon him, as upon any other person in a fiduciary position, it is incumbent to make full and fair disclosure of his interest and position with respect to that property. There is no difference in this respect between a promoter and a trustee, steward, or other agent." Morawetz on

Corporations, section 545, intimates that the true doctrine hardly goes to the length here stated, but still says the " promoters" are bound to exercise the highest degree of fairness in their dealings. The question of disclosure or concealment of information which should be communicated is not here involved. It is a question purely of false representations as to a substantial matter. And false representations upon the part of one party entering into the very inception of a joint business venture will nullify the entire transaction whenever the matter comes before a court of justice. At the time the sale was made these parties occupied fiduciary relations, and those relations prohibited the conduct practiced by the defendants as depicted by the finding of the court. In the eyes of the law the fact that these lands, at this time, were of the full value of the purchase price in no way relieved appellant of the duties and responsibilities resting upon him as a fiduciary. This principle is fully illustrated in *Bentley* v. *Craven*, 18 Beav. 75.

It is now claimed that all parties had knowledge of the cost price of these various tracts of land prior to the conveyance to the corporation, by virtue of a personal inspection of the original contracts given by the owners to Sanborn; that they acted with their eyes open, and that it is now too late to rely upon these false representations as the basis of an action. It is probably true that such knowledge came to the officers of the corporation as to some of the tracts, but that event occurred long after the $193,666.62 was collected and passed to the possession of Dennis and Sanborn. Again, such knowledge by the directors would not be knowledge to the stockholders. A fraud practiced upon the stockholders could not be ratified or even waived by the directors. This question was directly passed upon in *Simon* v. *Vulcan Oil and Mining Co.*, 61 Pa. St. 221.

It is also insisted that if the defendants practiced fraud in the sale of the lands and thereby caused the corporation to pay more therefor than they in right should

have paid, the remedy is not in the nature of the judgment
here recovered, but the action should be for a rescission
by reason of the fraud committed.   We are not in har-
mony with such views.   In the case of *Getty* v. *Devlin,*
54 N. Y. 403, a case very similar to the one at bar, in
speaking as to the proper remedy, it is said: "But I
think under the complaint in this action the four de-
fendants may be compelled to account for the profits
they made on the real estate and which they fraudu-
lently appropriated to the exclusion of their associates.
The court can ascertain what the land actually cost the
four defendants, and hold them to account for the bal-
ance.   This balance equitably belongs to those who
paid the money, and the plaintiffs can in this action re-
cover their *pro rata* share thereof."   The principles de-
clared in *Ex-Mission Land and Water Co.* v. *Flash et al.,* 97
Cal. 610, also justify the remedy here sought and obtained.
In an able and elaborate article found in the 16th Ameri-
can Law Review, at page 671, the status, duties, and
responsibilities of promoters are considered and the
true principle appertaining thereto is well stated as fol-
lows: "The substance of the law is that promoters are
corporate fiduciaries.   Transactions with their com-
panies wherein they deal honorably, with full disclosure,
and without seeking to influence the action of the cor-
poration, will be upheld.   But transactions in which
they suppress or misrepresent material facts, or other-
wise deceive the company, or corruptly control its action,
are fraudulent, and the company may elect either wholly
to set aside such transactions, or to *recover the promoter's
secret profits.*"

About the fifth day of May, John P. Sanborn returned
to his home in Michigan, but prior to his departure he
gave his nephew, Frederick D. Sanborn, a power of at-
torney to act for him in the collection of moneys,
making of contracts, deeds, etc., in furtherance prob-
ably of the merger of the venture then on hand, into
the corporation about to be formed.   At about this time
the $193,666.62 was paid to Dennis, and portions of it

passed to the original vendors through the medium of
himself and Frederick D. Sanborn; and thereupon con-
tracts of purchase were taken in the name of John P.
Sanborn to the Ford, Bradley, and Titus tracts, and pos-
sibly new contracts as to some of the others.    The
prospective stockholders becoming alarmed over the
fact that they had expended such a large amount of
money and possessed no written evidence as to their in-
terest in these various properties, upon May the 18th se-
cured from Frederick D. Sanborn, as attorney in fact of
John P., a statement in writing to the following effect:
"Know all men by these presents: That, whereas, I,
John P. Sanborn, have purchased (naming the various
tracts of land here involved), and whereas a corpora-
tion is about to be formed, known as the San Gabriel
Valley Land and Water Company, and whereas, the sub-
scribers of stock of said corporation are the real pur-
chasers of said lands, although the contracts thereof
are made to me now, therefore, I agree that as soon as
the organization is completed I will transfer all my
right, title, and interest, etc., to the corporation." This
writing was offered in evidence as the declaration or ad-
mission of John P. Sanborn that he had purchased this
property for the corporation, and under objection it was
admitted for such purpose.    We shall not review the
legal soundness of the ruling of the court in this re-
gard, for, if error was committed, we think it harmless.
If we look into the opinion of the court, as appellant
suggests, this evidence appeared to have some weight as
tending to show an original purchase for the corpora-
tion; yet, in the next succeeding clause of the opinion,
the judge says that there is ample evidence to support
that allegation of the complaint aside from the writing.
Neither does there appear to be any finding of fact that
Sanborn actually purchased these lands for the corpo-
ration or the prospective stockholders, and for this rea-
son the ruling of the court against appellant becomes
immaterial; but, in addition, and as conclusive of the
entire matter, we do not think any finding of fact that

Sanborn purchased these lands for the contemplated corporation, or that he subsequently represented to the parties that he had so purchased them, is material to the recovery or necessary to support the judgment. As we have heretofore fully indicated, the acts of Sanborn and Dennis, subsequent to the 20th of April, justify the recovery had, and hence their conduct prior thereto is not an essential element of the case.

An attempt was made to take the deposition of the appellant, Dennis, prior to the trial; but after the examination was had, his testimony being taken down and transcribed by a phonographic reporter, he either neglected or declined to subscribe to the same. At the trial the reporter was placed on the witness-stand, and, after refreshing his recollection from his transcription of the notes, under objection, testified to the statements of Dennis made at that time. Dennis being an active party to the litigation, there can be no question but that his statements pertaining to the subject matter of the action, wherever and whenever made, would be competent evidence against him. But the question here presented is whether the reporter, not having a definite and well-defined recollection of the statements so made after he had refreshed his recollection as far as possible from the writing, will be allowed to read the contents of the memoranda to the court. There appears to be some difference of opinion among courts and law-writers as to the proper practice at common law. But under our statute (Code Civ. Proc., sec. 2047) the course here adopted is expressly allowed. In the case of *People* v. *Lem You,* 97 Cal. 224, the practice was approved as justified by the foregoing provision of the code. And in the case of *People* v. *Gardner,* 98 Cal. 127, the identical question was presented, and this court said: "The remaining objection to the admission of the evidence of the witness, Briar, does not seem to be well founded, in view of the last provision of section 2047 of the Code of Civil Procedure." Appellant's contention that the reporter's original notes are the basis from which he should have

been required to refresh his recollection will not be considered, as such objection was not brought to the attention of the trial court. However, we do not intimate there is any merit in the point.

This action is brought by a dissatisfied stockholder, and a previous demand upon the corporation to commence the suit, and a refusal upon its part so to do, is made sufficiently plain from the record. There are several allegations of the complaint which have no support in the evidence, but they are immaterial, and, as a consequence, findings thereon against appellant become harmless.

Appellant should be allowed a credit of $7,500 paid to perfect the title to the Clapp tract, and should only be charged with a profit of $25,000 upon the Titus tract.

For those reasons we think the judgment should be for the sum of $65,500, with legal interest thereon from the fourth day of June, 1887. The cause is remanded, with directions to the trial court to modify the judgment to that effect.

PATERSON, J., and HARRISON, J., concurred.

Hearing in bank denied.