[Civ. No. 8768. Fourth Dist., Div. One. Feb. 13, 1968.]

BRISTOL CONVALESCENT HOSPITAL, Plaintiff and Respondent, v. CHARLES C. STONE et al., Defendants and Appellants.

Edgar R. Carver, Jr., for Defendants and Appellants.

Adams, Hunt & Martin and John G. Bradshaw for Plaintiff and Respondent.

WHELAN, J.—Defendants Charles C. Stone (Stone) and Mrs. Charles C. Stone (Mrs. Stone) have appealed from a judgment taken against them by default after their failure to

answer an amended complaint. In the court below no motion was made for relief from default, which was entered more than six months before the judgment. The Stones engaged new counsel on appeal.

The chief contention of the Stones is that the allegations of the amended complaint add nothing of substance to the original complaint to which they filed an answer, which it is now contended should have sufficed to answer the allegations of the amended complaint.

On July 19, 1963, plaintiff filed its complaint in six causes of action. The first cause of action alleged that defendant Stone had told a Mrs. Terry (Terry) he would contribute $65,000 to plaintiff when plaintiff should be incorporated, so that 60 percent of plaintiff's capital stock could be issued to Terry, who on her part was to contribute to Stone assets having a value of $52,000 to be reinvested by him in plaintiff; Terry was to transfer 8 percent of the capital stock of plaintiff to one Burlingame; that the corporation subsequently was incorporated and authorized to issue 60 percent of its stock to Terry for $65,000 cash; that Terry caused 8 percent of the stock to be transferred to Burlingame; that in making such agreement, Terry relied upon certain false and fraudulent representations of Stone made by him for the purpose of inducing action by Terry; it was not alleged directly that Terry paid anything to Stone, and only indirectly that she ''contributed'' $40,000.

Essentially, the first cause of action of the original complaint was one to obtain cancellation of 8 percent of plaintiff's shares caused to be issued to Burlingame. It did not allege directly that any shares were issued to Terry.

A second cause of action incorporated all the allegations of the first; and declared that the oral agreement between Terry and Stone was reduced to writing on December 4, 1961 and amended in writing on January 8, 1962, and that Terry performed her part of the agreement. In neither of the appended writings did Stone agree to pay plaintiff any money.

The third cause of action alleged the formation of a joint venture between Stone, Cella and Sive (two medical doctors), and Scobie (a real estate broker), of which a written memorandum dated October 24, 1960, was attached, and under which the two doctors were to furnish a building site worth $35,000 for a 50-bed convalescent hospital; ''Charles C. Stone and Associates'' was to have charge of construction of a building to cost $152,000; other improvements, such as grading, walls,

public utilities, etc., were to cost some $20,000; "Charles C. Stone and Associates" was to put in $70,000 cash; Scobie was to benefit as a result of his having brought the others together; Stone was to receive $12,300 of the $152,000 of the building cost, the items of which were set out in an estimate sheet, the $12,300 being set out as the profit in the construction; it was then alleged that Stone had agreed with defendant Young of W. C. Young, Inc., a building contractor, to construct the building for less than $95,000 and that the difference between that amount and $152,000 was to have been paid to Stone by Young; that the doctors signed the joint venture agreement, escrow instructions for the transfer of their real estate, and a construction contract with Young for $152,000; the latter contract recited that Young had been paid $25,350 "outside." It was not alleged directly that the building was ever constructed, nor, if so, what it cost or what its reasonable value was. A corporation was to be formed to carry out the plan.

In a fourth cause of action it was alleged that Stone had informed the two doctors that the cost of equipping the hospital would be $43,860; that Stone would procure the equipment at that price; that his only interest was that he would be paid a commission by the supplier when Stone had equipped 10 hospitals, of which plaintiff's would be one; that all the statements were false and known by Stone to be false, were made by him to induce action by the doctors who believed, relied upon and acted upon them; that the doctors signed a conditional sales agreement to buy the equipment from Stone for $43,860; that in fact the equipment was purchased subsequently by plaintiff from another supplier for $25,614; that the difference between that amount and $43,860 was a secret profit to Stone; damage to plaintiff in the sum of $20,000 was alleged.

The fifth cause of action alleged that an escrow agreement, dated February 27, 1961, was signed by Stone and the doctors, naming Orange County Title Company as escrow agent; that the escrow agreement reflected an amended joint venture agreement as originally reflected in the memorandum of October 24, 1960, except that it failed to state that Scobie was to receive 5 percent and Stone and Associates to receive 60 percent of plaintiff's capital stock; that under it title to the real property owned by the doctors was to be conveyed to Stone or his nominees; an interim loan of $141,000 for construction was to be obtained; Stone was to deposit the sum of $65,000

with the bank making the loan, to be used in connection with the construction; a corporation was to be formed to which title to the building site property would be conveyed; the corporation was to "include" Stone and the doctors; that after the escrow agreement was signed, Stone informed the doctors he had assigned to Terry his right to receive 60 percent of the stock, but that he would pay the $65,000 on behalf of Terry; that Stone did not pay in $65,000 or any money, but instead caused to be deposited with the escrow agent a purported assignment of a check for $57,500 from Stone to Young as well as purported receipts from Young to Stone of an additional amount ($7,500?); that in fact said check was never assigned; that by that means the escrow holder was induced to issue to Terry 60 percent of plaintiff's authorized capital; that the corporation commissioner's permit authorized the issuance of not to exceed 650 of its shares to Terry for $100 per share cash.

The sixth cause of action was against United Savings and Loan Association, which had made the building loan.

The first cause of action alleged assignments to plaintiff from the doctors, Terry, Scobie and other named persons of all their claims and causes of action against the Stones. That allegation and the allegations with regard to fraud practised on Terry are by reference carried into all the other causes of action.

The answer of Stone and Mrs. Stone, filed August 8, 1963, in large part consisted of denials of certain allegations of the complaint; it admitted the correctness of the various writings referred to in and attached to the complaint, and that Stone had received assets having a claimed value of $52,000 from Terry for the business enterprise in which they were engaged and had not transferred any part of it or of an additional $13,000 and had not paid plaintiff any part of the $65,000 mentioned in the second cause of action of the complaint; the answer to the fifth cause of action denied that no part of the $65,000 mentioned in that cause of action had been paid and denied that the Stones agreed to pay it; the answer admitted that Stone was to receive a profit from the construction of the hospital; and that Stone informed certain of the parties he had assigned his right to receive stock in plaintiff corporation to Terry.

As a separate defense, the Stones alleged that none of the alleged causes of action of the original complaint stated facts sufficient to constitute a cause of action.

A cross-complaint was filed with the answer. One of two

counts alleged the making and breach by plaintiff of a written contract to employ Stone as manager of the hospital; the second against the two doctors alleged the breach of the contract to buy equipment for $43,860 on which Stone claimed a loss of profit of $17,860.

Plaintiff's answer to the cross-complaint alleged unilateral rescission by Stone and a mutual rescission of the employment contract.

The case was set for trial and continued several times. Plaintiff, on June 1, 1964, replaced its attorney with the counsel that now represents it. On June 17, 1964, the case was ordered off calendar.

On March 8, 1966, plaintiff filed a motion noticed for March 30, 1966, for leave to file an amended complaint, supported by a memorandum of points and authorities and a declaration of its counsel. Hearing of the motion was continued several times until, on April 27, with both parties represented, it was taken under submission. A minute order entered May 6, 1966 recites granting of the motion on May 2.

On May 6, 1966, the amended complaint was filed and a summons thereon issued.

On May 6, notice was served on defense counsel of the ruling allowing the amended complaint.

An affidavit of service shows that copy of the amended complaint and summons were mailed to defense counsel on May 5, 1966.

On June 20, 1966, pursuant to written request, the defaults of Stone and Mrs. Stone were entered for failure to answer the amended complaint.

A memorandum of setting of the case for hearing on the default calendar was filed December 8, 1966, requesting a hearing on December 22.

On December 22, 1966, the matter came before the court, Scobie was sworn and testified, and the matter was taken under submission.

On December 29, 1966, judgment was rendered against Stone and Mrs. Stone in favor of plaintiff for $115,833.36. Notice of entry of judgment was served on defense counsel by the clerk on January 3, 1967.

The judgment contained in part these findings: "2. That defendants CHARLES C. STONE and MRS. CHARLES C. STONE defrauded BRISTOL CONVALESCENT HOSPITAL, a corporation, as set forth in the First Amended Complaint; and

"3. That the conduct and actions of said defendants com-

plained of in said First Amended Complaint proximately caused actual damages to plaintiff, after deducting all offsets and credits, in the sum of $115,833.36.'' The amount awarded was for compensatory damages.

A summary judgment was given in favor of plaintiff against Burlingame. In taking judgment against the Stones for the price of the 650 shares issued to Terry, credit was allowed those defendants for the price of the shares issued to Burlingame and ordered cancelled.

### COMPARISON OF ORIGINAL AND AMENDED COMPLAINT

In the amended complaint there was no cause of action with regard to the equipment purchase contract which had been the subject of the fourth cause of action of the original complaint; the sixth cause of action of the original complaint likewise was omitted from the amended complaint.

The amended complaint was in seven causes of action, six of which dealt with Stone and Mrs. Stone; the seventh was to obtain cancellation of 87 shares of plaintiff's stock that Terry had transferred to Burlingame upon the ground it had been issued in violation of the permit from the corporations commissioner; that had been the subject of the first cause of action of the original complaint.

Our comparison of the amended complaint and the original complaint, made paragraph by paragraph, need not be recited in detail. A summary discloses material additions in the way of allegations of fact necessary to state certain causes of action, new theories of liability, and new documentation of some of the ultimate facts alleged.

There are exhibits attached to the amended complaint that were not attached to the original complaint, including an undated agreement between Young and Stone which recited that Young would turn over to Stone all money above $85,000 paid by the lending institution and would accept ''a part of a second trust deed in the amount of $17,000.00''; another agreement, dated January 7, 1963, between W. C. Young, Inc. and Stone, recited that Young was to pay to Stone the difference between $126,650 and $85,000, of which the final amount was said to be $29,724; and Young agreed to apply that amount for Stone's benefit by making certain payments totaling that amount; a loan agreement, dated November 28, 1961, signed by the two doctors, W. C. Young, Inc. and United Savings and Loan Association; an ''assignment of funds'' from Stone to Young dated August 16, 1962 covering a purported check of $57,500; the assignment recited it was to pay

bills for paving, parking, grading, sewer, water and other items not covered by the construction contract of $152,000; and a receipt from Stone of a certificate of 650 shares of plaintiff's stock in the name of Terry.[1]

Of the six causes of action of the amended complaint directed against the Stones, one was on the theory that having assumed a construction loan of $145,000 for the hospital, the actual cost and value of which was only $85,000, plaintiff was damaged in the amount of the difference; one on the theory of plaintiff's being the beneficiary of Stone's agreement with Terry to pay plaintiff $65,000, as well as being Terry's assignee; one on the theory of plaintiff's right to recover the $65,000 Stone agreed in the escrow agreement to pay; one to recover the price of the 650 shares obtained by Stone from the escrow by the use of the "assignment" dated August 16, 1962; the fifth cause of action, based upon the rights of the two doctors as defrauded joint venturers, of whom plaintiff was assignee, dealt with a secret profit of $29,227.97 received by Stone which received specific mention in the agreement dated January 7, 1963; the sixth cause of action dealt with the same specific amount and written agreement but on behalf of plaintiff directly as having been defrauded by corporate promoters.

There was an extensive rearrangement of the causes of action that are common to the complaint and the amended complaint; some purported causes of action of the original complaint failed to allege essential matters.

In the amended complaint the following was alleged for the first time: In the first cause of action, that plaintiff was incorporated pursuant to the agreement of the parties;[2] the theory that defendants were guilty of breach of a fiduciary duty as corporation promoters in making a secret profit;[3] that the basic cost of construction was $85,000; that there was the written agreement between Stone and Young that Stone would be paid everything over $85,000; that the fraudulent representations were made with intent to deceive, ultimately,

---

[1] Those exhibits which should have been part of the clerk's transcript are not so included. They were found in the clerk's file of the case as a part of the amended complaint.

[2] The allegation of status as a corporation is found in all causes of action of the original complaint, but only the first alleged incorporation as one of the facts giving rise to a cause of action; that allegation was in a paragraph of the first cause of action that was incorporated by reference only in the second.

[3] Found also in the sixth cause of action.

the plaintiff corporation; that subsequently plaintiff was incorporated, received the construction as a corporate asset and assumed the $145,000 construction loan, all in reliance upon the false representations made by the Stones to the doctors, Scobie, and Terry; that defendants knew and intended that the incorporation and plaintiff's assumption of the obligation would result from their promotional efforts; that they were guilty of breaches of fiduciary duties as promoters to plaintiff's damage in the sum of $60,000.

In the fourth cause of action, that it was Stone who took delivery of the 650 shares of stock held in escrow; that the purported assignment of a check and receipts was falsely represented to the escrow holder as evidence of payments made by Stone for plaintiff's benefit; that in reliance thereon 60 percent of the stock was released from escrow; that the sole purpose was to obtain the stock without payment therefor; that in fulfillment of the scheme, Young failed to demand payment of said check or assignment from Stone or anyone else, and returned the documents to Stone without paying or crediting plaintiff for said $65,000 or any portion thereof.

The second cause of action of the amended complaint alleged with regard to the written agreements between Stone and Terry that only some of the provisions of the oral agreement with Terry were reduced to writing on December 4, 1961, and that agreement was amended on January 8, 1962.

Mrs. Stone's relationship to the causes of action was alleged in both the original and amended complaints as one of several persons, including Burlingame and Young, engaged with Stone in a conspiracy to defraud investors in convalescent hospitals, the construction of which was to be promoted by the conspirators.

### LEGAL CONTENTIONS

In addition to the claim that they were not required to answer the amended complaint, defendants claim they were not served with the amended complaint because it was served by mail the day before it was filed, and that the judgment is excessive in amount.

Plaintiff controverts the arguments of defendants, and in addition puts forward the contention that the appeal should be wholly disallowed because of defendants' failure to take any steps in the trial court to set aside the default.

### RIGHT TO APPEAL

A defendant against whom a default judgment has

been taken has a right to appeal from it. (*Gudarov* v. *Hadjieff*, 38 Cal.2d 412 [240 P.2d 621]; *Nemeth* v. *Trumbull*, 220 Cal.App.2d 788, 790 [34 Cal.Rptr. 127].)

What must be determined is the scope of review, the conditions under which the judgment might be reversed, and the effect of the reversal. Generally, on such an appeal, attack is confined to jurisdictional matters and fundamental pleading defects. (*Nemeth* v. *Trumbull, supra,* 220 Cal.App.2d 788, 790; *Reed Orchard Co.* v. *Superior Court,* 19 Cal.App. 648 [128 P. 9, 18]; *Lester* v. *Beer,* 74 Cal.App.2d Supp. 984 [168 P.2d 998].) An objection that the complaint failed to state facts sufficient to constitute a cause of action may be considered. (*Gore* v. *Witt,* 149 Cal.App.2d 681, 686 [308 P.2d 770]; *Martin* v. *Lawrence,* 156 Cal. 191 [103 P. 913].) The question as to whether or not a default was properly entered may be reviewed upon an appeal from the judgment. (*Pickerill* v. *Strain,* 196 Cal. 683 [239 P. 323].)

Under certain circumstances on appeal from a default judgment, the default may be set aside even though no proceedings were taken in the trial court under section 473, Code of Civil Procedure, to set it aside. (*Jameson* v. *Simonds Saw Co.,* 144 Cal. 3 [77 P. 662].)

█ The default of the defendant in an ordinary action of this character admits, so far as such defaulting defendant is concerned, the absolute verity of all the allegations of the complaint giving rise to liability. (*Los Angeles* v. *Los Angeles Farming & Mill. Co.,* 150 Cal. 647 [89 P. 615].)

█ The setting aside of a judgment obtained on an unvacated default properly entered results merely in the rendition of such another judgment as the plaintiff's pleadings and evidence might support. (*Howard Greer etc. Originals* v. *Capritti,* 35 Cal.2d 886 [221 P.2d 937].)

█ Evidence must be taken to prove the amount of damages in an action sounding in tort (*Taliaferro* v. *Hoogs,* 219 Cal.App.2d 559, 560 [33 Cal.Rptr. 415]); likewise in an action to recover under a contract where the complaint seeks to recover an amount other than a specified amount set forth in the contract itself, or for breach of a contract that does not express the amount of liquidated damages. (*Lynch* v. *Bencini,* 17 Cal.2d 521, 526-527 [110 P.2d 662].)

Defendants would have us hold as a matter of law that the default itself be set aside either because the amended complaint was not served upon them, i.e., that the service attempted to be made on May 5 was abortive because the

formal amended complaint was not filed with the clerk until May 6; or because their answer on file to the original complaint was a sufficient answer to the amended complaint so that the clerk should not have entered the default and the trial court should not have rendered judgment against defendants. These are alternative grounds because if the amended complaint makes no changes of substance service of it might be excused.

Defendants rely heavily upon *Gray* v. *Hall,* 203 Cal. 306, 311 [256 P. 246], for the proposition that the answer to the original complaint will serve as an answer to an amended complaint where the amendment is merely as to formal or immaterial matters and does not change the cause of action; where the original plea or answer set forth a sufficient defense to the declaration or complaint as amended.

In fact, in *Gray* v. *Hall, supra,* which was an appeal from a superior court judgment denying mandate, although the Supreme Court stated the last proposition to be the law, it reversed the trial court and directed the issuance of a writ of mandate to the clerk of the trial court to carry out the provisions of the default judgment, obtained after failure of the defendant to answer an amended complaint. That action of the Supreme Court was based upon the facts that no steps were taken in the trial court in the action in which the default was entered to set it aside, or to appeal from the default judgment, which, it was held, was immune from collateral attack in the proceeding to obtain mandate.

In *Russell* v. *Ramm,* 200 Cal. 348, 359-360 [254 P. 532], is found the following language: " ' [W]e may assume, if not presume, that defendant was content to let the original answer stand as the answer to the amended complaint. The rule, as generally approved by the authorities, is that ''a plea to the original declaration will be treated as a plea to an amended declaration, if applicable and responsive thereto.'' Of course, if the answer or plea be not responsive to the complaint or declaration, then it will be treated as a nullity. (See 31 Cyc. pp. 460, 461, and cases cited in the footnotes.)' '' *Russell* v. *Ramm, supra,* had to do with a claim that the filing of an amended complaint after trial, apparently to conform to proof, left plaintiff with a complaint that failed to state a cause of action because of omission from the amended complaint of an essential paragraph found in the original complaint the allegations of which had been proved at the contested trial.

In *Drotleff* v. *Renshaw*, 34 Cal.2d 176, 182 [208 P.2d 969], the appeal was from a judgment after trial during which plaintiff amended his complaint by inserting the true name of a fictitiously named defendant. The question was whether the defendant, whose name was so inserted, and who had previously answered the complaint, need have been served with the amendment. The general principle stated in *Gray* v. *Hall, supra,* 203 Cal. 306, is recognized in this language: ". . . defendants' answer, though not addressed to the complaint as amended, stood effective as a denial of the material allegations thereof. . . ."

Defendants cite also *Smith* v. *Los Angeles Bookbinders Union No. 63,* 133 Cal.App.2d 486, 501 [284 P.2d 194], where, on appeal from judgment in favor of defendants, the action of the court below in granting a motion under section 473, Code of Civil Procedure, to set aside defendant's default in failing to file an answer to an amended complaint was considered and found proper. *Ermentraut* v. *American Fire Ins. Co.,* 63 Minn. 194 [65 N.W. 270], cited in *Gray* v. *Hall, supra,* 203 Cal. 306, was also a case in which the default judgment was set aside by the trial court.

The application of the principle declared in *Gray* v. *Hall, supra,* calls for a workable procedural rule because of certain problems that immediately present themselves. *Gray* v. *Hall* itself provides no such guidance.

Sections 473, 432 and 586, Code of Civil Procedure, all bear upon the question.

"The court may, in furtherance of justice, and on such terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect; and may, upon like terms, enlarge the time for answer or demurrer. The court may likewise, in its discretion, after notice to the adverse party, allow, upon such terms as may be just, an amendment to any pleading or proceeding in other particulars; and may upon like terms allow an answer to be made after the time limited by this code." [§ 473]

"If the complaint is amended, a copy of the amendments must be filed, or the court may, in its discretion, require the complaint as amended to be filed, and a copy of the amendments or amended complaint must be served upon the defendants affected thereby. The defendant must answer the amendments, or the complaint as amended, within ten days

after service thereof, or such other time as the court may direct, and judgment by default may be entered upon failure to answer, as in other cases.'' [§ 432]

''In the following cases the same proceedings must be had, and judgment must be rendered in the same manner, as if the defendant had failed to answer.

''1. If the complaint has been amended, and the defendant fails to answer it, as amended, or demur thereto, or file a notice of motion to strike, of the character specified in Section 585, within 10 days after service thereof or within the time allowed by the court. . . .'' [§ 586]

The entry of the default is a ministerial duty performed by the clerk, who has no duty and no authority himself to make a determination whether the answer to the original complaint might stand as an answer to the amended complaint. Such a determination is a matter of law calling for the exercise of judicial decision. But the statutes have not placed any duty upon the clerk to have such a determination made by the court. The clerk's function is to determine if there is proof of service and whether an answer has been filed within the time allowed by law or the order of the court.

If the clerk's mechanical computation of the time elapsed since service was completed is in error and he should enter a default prematurely, a judgment based upon such default is void. (*Montgomery* v. *Norman,* 120 Cal.App.2d 855 [262 P.2d 360]; *Baird* v. *Smith,* 216 Cal. 408, 411 [14 P.2d 749].) Such a judgment may be set aside by the court at any time, and regardless of how the matter comes to the court's attention.

It is clear from the decision of *Gray* v. *Hall, supra,* 203 Cal. 306, that a judgment entered upon default for want of an answer to an amended complaint is not a void judgment if the time for answering under ordinary circumstances had indeed expired before entry of the default. Such a default, it would seem, is of the class that may be set aside only under section 473, Code of Civil Procedure, or on appeal from the judgment, or by suit in equity.

There is a general principle that questions not raised in the trial court will not be considered on appeal. (*Myers* v. *McDonald,* 68 Cal. 162, 166-167 [8 P. 809]; *Weidenmueller* v. *Stearns etc. Co.,* 128 Cal. 623, 625 [61 P. 374].)

Under that principle, if such a default is to be set aside on appeal from the judgment, it would in general be because of some error in law on the part of the court, either in

refusing to set aside the default on a timely motion made under section 473 Code of Civil Procedure, or by requiring a defendant to answer anew although his answer on file was sufficient to meet the allegations of the amended complaint. In other words, there must generally have been an abuse of discretion in refusing to grant relief to which a defendant was entitled.

An equivocal situation should not be allowed to arise between the parties with regard to the sufficiency of an answer to an original complaint to stand as an answer to an amended complaint. Each party should know what defendant's obligation is. One consideration is that under section 586, Code of Civil Procedure, defendant may demur to an amended complaint; should he do so, plaintiff should not be permitted to argue that the demurrer comes too late because defendant's original answer is a sufficient answer to the amended complaint and defendant may not demur after he has answered.

Defendant should not be uncertain as to whether he must answer; plaintiff should know whether he is entitled to ask for a default. Even should the lawyers on both sides indulge in a guessing game, the court should not be drawn into such a game, but should be informed what position the defendant has taken with regard to the need for an answer to the amended complaint.

▮ Unless defendant is of opinion that his answer to the original complaint is a sufficient answer to an amended complaint, he should not be permitted, after failing to answer the amended complaint because of his client's decision not to defend further, or because of negligence or forgetfulness, for the first time on appeal to fire a chance arrow at the theory that the amended complaint did not require an answer in any event. ▮ On the other hand, the defendant who, before the time to answer has elapsed, has formed the opinion that a new answer is not required to an amended complaint, should bring his claim to the attention of the trial court either before the entry of default by seeking the court's ruling on the subject, regardless of what that ruling may be, or after the entry of default by motion to set aside the default, as was done in *Smith* v. *Los Angeles Bookbinders Union No. 63, supra,* 133 Cal.App.2d 486. ▮ It may be noticed judicially that there is a well-established practice in the profession to ask for a stipulation that an answer to an original complaint may be deemed to be the answer to an amended complaint.

The propriety of seeking a ruling that the answer to the original complaint should stand as an answer to the amended complaint before the time for answer had expired was recognized in the early case of *Mulford* v. *Estudillo*, 32 Cal. 131, 136. Defendants here had ample opportunity to make such a request. Their counsel was twice before the court on plaintiff's motion for leave to amend, the second time when the motion was taken under submission; he was also served with notice that the motion had been granted.

 We cannot, as argued in defendant's brief, decide that the subjective attitude of the plaintiff was that the amendment effected no material change, but was one of form. The facts do not indicate such an attitude on the part of defense counsel at the time, in view of there having been two continuances of the hearing with two appearances by defense counsel and the matter's having been taken under submission.

It is noted that there was alleged as a special defense to the original complaint that none of the causes of action of the complaint alleged facts sufficient to constitute a cause of action. No such claim is made on appeal with regard to the amended complaint, although it would be grounds for the reversal of a default judgment that the complaint on which it was based unquestionably failed to state a cause of action after according to the complaint the benefit of conclusions of law, ambiguous statements and evidentiary matter contained in the complaint.

The general rule we postulate should be followed in this case unless the record discloses some evidence of unfairness in the proceedings in the court below. We have not found any such evidence.[4]

---

[4]We have scrutinized the record before us as well as the file of the case kept in the office of the clerk of the superior court. There are in that file, but not made a part of the record on appeal, a declaration of the attorney for plaintiff in support of his motion for leave to amend, and a six-page trial brief in support of the application for default judgment. The latter contains over the signature of plaintiff's counsel the following: "Although the attorney for CHARLES C. STONE and MRS. CHARLES C. STONE attended the hearing on plaintiff's Motion to Amend, received the aforementioned pleading and notices, received an extension of time from this office within which to answer, said defendants failed to so answer. Their default was entered on June 20, 1966, and their attorney was so advised."

The declaration in support of the motion for leave to amend states as the reason for seeking to amend the following: "Several matters, not known at the time of filing the complaint, necessitate the filing of this amended complaint. Said information was obtained by means of deposi-

██ Finally, it cannot be said as a matter of law that the pleading before us should have been deemed, without prior discussion, as sufficiently answered by the answer to the original complaint. If the answer were to stand as sufficient, it could only have been as the result of a ruling based upon an exercise of the trial court's discretion, which was not invoked.

### SERVICE OF AMENDED COMPLAINT

██ We are of opinion that the amended complaint was effectively served on counsel for defendants by mailing it on May 5, although the amended complaint was not filed in the clerk's office until May 6. Also, on May 6 notice was served by mail on defendants' counsel that leave to file the amended complaint had been granted. Request for entry of default was not made until June 20.

Defendants cite in support of their contention *Taliaferro* v. *Taliaferro*, 217 Cal.App.2d 216 [31 Cal.Rptr. 774], in which the only service of the amendment to complaint was by the copy that accompanied plaintiff's notice of motion for leave to file the amendment; the appeal was from an order granting defendant's motion to set aside the default entered after leave had been granted to file the amendment. No notice of the granting of the motion for leave to amend was served on defendant, and the record was otherwise devoid of evidence that defendant knew that leave to amend had been granted.

A different result on appeal was reached in *Hinds* v. *Superior Court*, 65 Cal.App. 223 [223 P. 422], where relief from default was not sought in the lower court, and the record showed defendants' attorney was present when the motion for leave to amend was granted, although the only service of the amendment was by the copy that accompanied notice of that motion.

In *Billings* v. *Palmer*, 2 Cal.App. 432 [83 P. 1077], it was assumed but not decided, on appeal from an order setting

tions, informal discovery, pre-trial conference with the defendants and settlement with defendants Young and Young, Inc.

"Plaintiff is now better informed as to the actions of the defendants with regard to their agreements with the investors in plaintiff corporation, the construction of the convalescent hospital, the secret agreement between Stone and Young, Inc., pertaining to said construction, and the issuance of shares of plaintiff corporation.

"Amendment of the complaint will result in a clarification of the complicated issues involved in this case and will allow the issues to be litigated in a more orderly manner than would be possible under the original complaint. In the interest of having a full disclosure of the facts so that the parties can be afforded substantial justice, it is necessary that plaintiff be allowed to amend its complaint."

aside a default, that where service was made of the amended complaint one day before it was filed with the clerk, the service was good but not effective until the date on which the amendment was filed from which date the time within which to answer would run.

### FAILURE TO DISPOSE OF CROSS-COMPLAINT

Defendants point to the fact that Stone's cross-complaint against plaintiff in one count and against the doctors in a second count remains undisposed of.

The judgment recites that the damage to plaintiff "after deducting all offsets and credits," was $115,833.36.

Stone's cross-complaint against plaintiff sought $30,000 damages under an employment contract. No evidence was taken on the cross-complaint, and indeed the issues drawn by it and the answer thereto could not properly have been before the court because notice of trial on the cross-complaint was not given to Stone.

In general, the judgment in an action in which there is a cross-complaint should decide all issues including those raised by the cross-complaint. That is so where the plaintiff and the defendant in the cause of action set forth in the complaint are respectively cross-defendant and cross-plaintiff in the cross-complaint. (*Sjoberg* v. *Hastorf*, 33 Cal.2d 116, 118 [199 P.2d 668]; *Nicholson* v. *Henderson*, 25 Cal.2d 375, 378 [153 P.2d 945]; *Moss Constr. Co.* v. *Wulffsohn*, 116 Cal.App. 2d 203, 205 [253 P.2d 483].)

Mrs. Stone is not a party to the cross-action, and plaintiff is not a party to the second cause of action of the cross-complaint. Yet, as between plaintiff and Stone, the latter's claim under the employment contract should have been disposed of by the same judgment that disposed of plaintiff's causes of action under the amended complaint. A contested trial of the issues raised by the first cause of action of the cross-complaint and a default hearing on plaintiff's amended complaint are not incompatible. Since the judgment appealed from failed to dispose of the cross-action against plaintiff, it must be reversed. (*Bank of America* v. *Lamb Finance Co.*, 145 Cal.App.2d 702, 715 [303 P.2d 86].) It is not essential, however, that Stone's claim against the doctors alleged in the second cause of action be disposed of in the same trial or by the same judgment.

## SUFFICIENCY OF THE EVIDENCE

Defendants point out that the oral evidence presented to the court showed that $500 was left in the building loan account of which plaintiff has had the benefit, but for which defendants received no credit in the judgment.

On the evidence presented, however, defendants were entitled to receive a credit for the $500 that plaintiff received from the building loan account and applied in reduction of the note.

Exception is taken by defendants to the fact that the judgment awarded plaintiff the full difference between the construction loan of $145,000 and $85,000, the cost of the building, rather than the specific amount of $29,227.97 mentioned in the written agreement between Stone and Young dated January 7, 1963.

The building contract was dated November 28, 1961. It recited a contract price of $152,000; and had on the first page the following notation: "The sum of $25,350.00 has been paid outside to Builder. Hold $126,650 in Building Loan Account."

The agreement dated January 7, 1963, recited other collateral agreements between the parties and spoke of the sum of $29,724 as being "the final amount which Young owes to Stone under their said agreement." That obligation was to be considered as satisfied if Young should make for Stone's benefit payments to other persons totaling $29,227.97.

A question arises, also, whether the undated agreement between Young and Stone providing that Young would pay Stone "all money above $85,000.00 paid by the lending institution" referred to the difference between the full loan of $145,000 and $85,000, or the difference between $85,000 and the amount that, according to an endorsement on the building contract, was to be left in the building account because $25,350 had been paid "outside"; linked with that question is the question whether Stone received some part of the $18,350 loan proceeds which was the excess over that $126,650.

It is possible from all this that $29,227.97 was not the full amount by which Stone benefited from the proceeds of the construction loan. It appears, also, that an explanation of the rather complicated business relations between Stone and Young could be given only by one of them.

It is not unlikely that the plaintiff, in making the allegations with regard to the January 7, 1963 agreement and in attaching a copy to the amended complaint, intended to give

documentary proof of at least a minimum amount to which plaintiff would be entitled to recover, and also to gain the moral advantage of bringing to light such documentary evidence of Stone's alleged double-dealing. We cannot say, therefore, that plaintiff's recovery as to that element of damages should have been limited to the sum of $29,227.94.

It may be that the testimony taken at the hearing that resulted in the judgment appealed from need not be presented anew; however, we note that under the theory of fraudulent inducement to assume the $145,000 obligation, which sounds in tort, an award of damages therefor would be governed by section 3333, Civil Code. Such amount reasonably would be the difference between the amount of the obligation assumed by plaintiff and the reasonable value of the hospital as constructed by Young; in a default hearing the actual cost of that construction might be taken as its reasonable value.

On the other hand, under the theory that Stone, as a promoter of the corporation, was a fiduciary, any secret profit he made would be considered as being held in trust for the plaintiff. (*Burbank* v. *Dennis,* 101 Cal. 90 [35 P. 444]; *Victor Oil Co.* v. *Drum,* 184 Cal. 226 [193 P. 243].)

The trial court should proceed to try the issues raised by the first cause of action of the cross-complaint and the answer, or, in its discretion, to try all issues raised by both causes of action of the cross-complaint; to take such additional evidence in support of the amended complaint as plaintiff may desire, as in a default hearing; and to enter a single judgment awarding plaintiff such amount as it may be entitled to by default under the amended complaint, which judgment should cover also the findings resulting from the trial of the issues of the first cause of action of the cross-complaint, and of the second cause of action of the cross-complaint, if tried at the same time.

Judgment reversed with directions to the trial court to proceed in accordance with the views expressed herein.

Brown (Gerald), P. J., and Coughlin, J., concurred.